Cuddeback, J.
 

 Chapter 899, Laws of 1911, authorized the municipal explosives commission of New York city to make regulations for “ the better prevention of fires.” The act also provided that such regulations when approved by the fire commissioner should constitute a chapter of the Code of Ordinances of the city. Violation of the ordinances is made a misdemeanor.
 

 Pursuant to the statute the following regulations were duly adopted: •
 

 “§ 366. It shall be unlawful for any person to store, house or keep within the City of New York any motor vehicle containing volatile' inflammable oil, except in a building, shed or inclosure, for which a garage permit shall have been issued by the Fire Commissioner.
 

 “§ 370. No garage permit allowing the storage of volatile inflammable oil shall be issued for any building, shed or inclosure —
 

 “(a) Which is situated within fifty (50) feet of the nearest wall of a building occupied as a school, theatre or other place of public amusement or assembly;
 

 
 *264
 

 “
 
 (b) Which is occupied as a tenement house or hotel; ” etc.
 

 After these regulations became of force the relator applied for a permit to use as a garage No. 130 West 102nd street in the borough of Manhattan, which he held under lease. The relator set forth in his application that he desired to store on the premises mentioned 200 gallons of gasoline, 100 gallons of lubricating oil, 50 gallons of kerosene and 35 automobiles.
 

 It appears that No. 130 West. 102nd street, referred to in the application, adjoins on the west Public School No. 179. Over 1,700 pupils attend the school, of whom about 700 are under the age of ten years. On the east and adjoining the relator’s premises is a five-story tenement house occupied by ten families. In the rear of that another five-story tenement house, occupied by fifteen families, separated from the garage by a court five feet wide. There were three fires in the relator’s garage between February 1st, 1911, and the time of the commencement of this proceeding.
 

 The application for the permit was denied solely on the ground, as it is alleged in the petition, that the relator’s premises are situated within 50 feet of the nearest wall of a school building. The relator seeks in this proceeding to compel the defendants to issue the permit applied for. So far he has been unsuccessful.
 

 He challenges the' regulation quoted as being in violation of his constitutional rights, because it deprives him of his property without due process of law, and denies to him the equal protection of the law. It seems to me that the regulation is not objectionable on the score stated by the relator. The object sought is the preservation of public safety and the welfare of the community. The enactment is not an arbitrary interference with the rights of the individual, but is a fair, reasonable and appropriate exercise of the police power.
 
 (Fisher Co.
 
 v.
 
 Woods,
 
 187 N. Y. 90;
 
 City of Rochester
 
 v.
 
 West,
 
 164
 
 *265
 
 N. Y. 510.) There certainly can be no criticism of the regulation so far as it relates to new establishments of the kind forbidden.
 
 (City of Chicago
 
 v.
 
 Ripley,
 
 249 Ill. 466;
 
 Laurelle
 
 v.
 
 Bush,
 
 119 Pac. Rep. 953.)
 

 The relator’s main objection to the ordinance is that it is made applicable to a building that had been used as a garage and for the storage of gasoline, lubricating and other oils prior to the time the enactment took effect. The building on the relator’s premises was constructed in 1903. The school was built two years before. From the time of its erection the relator’s building has been used as a garage by himself or others, and a permit therefor was issued each year-under previous regulations until the year 1910. Since that time the business has been carried on without a permit. The relator holds under a lease which has twenty-one years to run at an annual rent of $300. This rent the relator is under obligation to pay and his allegation is that the building is not available for any kind of business other than a garage. Hence his grievance.
 

 In
 
 Tenement House Dept.
 
 v.
 
 Moeschen
 
 (179 N. Y. 325; 203 U. S. 583) it was held that a statute requiring sinks and privy vaults in existing tenement houses to be removed and to be replaced by individual water closets was a proper and constitutional exercise of the police power, though the expense of making the necessary changes was very considerable. The court said: “ It is a well recognized principle in the decisions of the State and Federal courts that the citizen holds his property subject not only to the exercise of the right of eminent domain by the State, but also subject to the lawful exercise of the police power by the legislature; in the one case property is taken by condemnation and due compensation; in the other the necessary and reasonable expenses and loss of property in making reasonable changes in existing structures, or in erecting additions thereto, are
 
 damnum absque injuria.”
 
 (p. 330.)
 

 
 *266
 
 In
 
 Laurel Hill Cemetery
 
 v.
 
 City of San Francisco
 
 (216 U. S. 358) an ordinance prohibiting the burial of the dead within the limits of the city was sustained. In that case it appeared that the plaintiff was the owner of a cemetery. The land had been dedicated as a burying ground before it was included in the limits of the city. A great number of burial lots had been sold and a large amount of money had been spent by the owners in embellishing the grounds. There remained unsold lots to the estimated value of $75,000. The court said: “ The only question that needs to be answered, if not the only one before us, is whether the plaintiff’s property is taken contrary to the Fourteenth Amendment.” The answer was that it was not.
 

 In
 
 Union Oil Co.
 
 v.
 
 City of Portland
 
 (198 Fed. Rep. 441) the city council had passed an ordinance defining the limits wherein crude petroleum might be stored within the city. The plaintiff purchased land and began the erection of a storage plant for petroleum outside 'these limits, whereupon the council amended the ordinance so as to bring the plaintiff’s property within the restrictéd territory. The court sustained the ordinance as amended, saying that “The right to exercise the police power is a continuing one, and private property and business is always subject to a legal exercise thereof.”
 

 In
 
 Standard Oil Co.
 
 v.
 
 City of Danville
 
 (199 Ill. 50) an ordinance made it unlawful to keep or store petroleum or explosive oils within one thousand feet of any dwelling. The court in upholding the ordinance said: “The fact that the greater number of residences, business houses, etc., now within one thousand feet of the plant of the appellant company were built after the plant had been located at its present site does not entitle the appellant company to insist that it has become vested with the right to continue to operate its plant and keep on storage the inflammable, explosive and offensive oils, liquids and substances specified -in the ordinance. The health, safety
 
 *267
 
 and comfort of the people are the controlling considerations, and prescriptive rights to endanger either cannot he acquired.”
 

 The relator in his brief says that in the city of New York there are seventy-five garages, some of them valuable structures, which will come within the provisions of the ordinance under consideration if it is declared valid. To my mind that does not furnish an argument against the enactment sufficient to condemn it. The storing of volatile inflammable oil in garages located near buildings wherein people congregate is plainly a dangerous practice. The legislature has authorized the adoption of this ordinance which will stop that practice. In particular instances some loss will follow the enforcement of the ordinance, but it cannot be avoided on that ground. It must be tested with a view to its general purpose and its efficiency to effect that end.
 

 As was said in the
 
 Tenement House Case (supra):
 
 “It is well settled in this court and in the Supreme Court of the United States, that the constitutionality of a statute may be determined by considering its language and the material facts of which the court can take judicial ' notice. "" * * It is not the hardship of the individual case that determines the question, but rather the general scope and effect of the legislation as an exercise of the police power in protecting health and promoting the welfare of the community at large. ” (p. 330.)
 

 Read in the light of the decisions cited the regulation of the municipal explosives commission is valid and should be sustained.
 

 The order appealed from should be affirmed, with costs.
 

 Werner, Hisgook, Chase, Collin and Hogan, JJ., concur; Willard Bartlett, Oh. J., absent.
 

 Order affirmed.