30    MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown.    [Vol. 25  (N.S.)

## THE YOUNGSTOWN ZONING ORDINANCE UPHELD.

Common Pleas Court of Mahoning County.

THE KAHN BROTHERS COMPANY V. CITY OF YOUNGSTOWN ET AL.

Decided, May, 1924.

*Zoning—Validity of Building Regulations Enacted under the Police Power in the Interest of the Public Welfare.*

Under the Youngstown zoning ordinance the plaintiffs are barred from erecting an apartment house on the premises in questiion, and they sought to enjoin enforcement of the ordinance on the ground that the restriction was for the benefit of adjacent property owners and for purely aesthetic purposes.

Contrary to first impression, the court finds that the erection of an apartment house in the locality named will be a serious detriment to the neighborhood, in that it will increase the fire hazard, and will be creative of noises from autos, taxies, milk wagons, drays, etc., in a locality where peace and quiet now prevail; that it will obstruct light and air; that sooner or later it will bring with it the immoralities which always attend the building of such structures; that it will increase the danger arising from the spread of disease; that obnoxious gases, soot and smoke will be thrown off by such a building; that it will unquestionably depreciate the value of real estate in that vicinity; and that the public health, safety, convenience, morals, prosperity, tranquility and general welfare afford ground for denying the injunction asked.  A great number of authorities are cited in support of the position taken by the court.

LYON, J.

This is an injunction case.  A temporary restraining order having heretofore been issued by this court, the case is now here upon the merits.  In short, as submitted to the court the only question for determination is as to the constitutionality of the zone ordinance of the city of Youngstown, the contention of plaintiff being that it is apparent the municipality has gone beyond the limits of its valid police power and has undertaken to restrict the use of property merely for the benefit of adjacent private owners or for purely aesthetic purposes.  The court has reviewed each case cited and has taken the time not only to study the cases that have been presented,

but numerous other cases in the state courts, the Federal Courts and the Supreme Court of the United States, as well as different text books. The court has spent practically all of its spare time for two months upon this question.

Upon the presentation of the case, the court was impressed, without a study of the question, that the rights of the plaintiff would prevail; and the court feels that any court sitting in the trial of a case of this character would be impressed the same way without a careful perusal and an analytical study of the cases that have been decided in this country on this question and those relating thereto. A court in my judgment cannot give justice to this case or class of cases without a careful study and analysis of the great number of cases that have been passed upon by the courts of last resort in this country. Some of the rules are old and well established, but the application of those rules in a case of this character must be done with careful study. Legislative enactments upon which the ordinance depends have been the turning point in many cases, so that the bare assertion that this case or that case bears upon the question to be solved here must be run to the "grass roots" before a court can be honestly satisfied as to whether or not it is applicable.

Seldom do two cases arise that are analagous in the test of Police Power vs. Constitutional Rights of Property. No rule has yet been formulated by the eminent jurists who have passed upon the question that is absolute, and it must be so, for police power is active and not dormant. If courts could definitely fix a rule where rights of property yield to the general welfare in legislation of this character, we could reasonably say that there is an end to human progress governmentally and we have reached the Utopian period in governmental affairs. But the law must keep pace with development. Our courts in the construction of the limitation of police power must give it life and activity. A court can only interfere with such laws (as in this zoning ordinance), when there is a clear abuse of legislative power. *Prima facie* every act of a legally constituted legislative body is constitutional, and a person who assails a legislative enactment on that ground must clearly establish his contention. Thus, log-

ically, it follows that in this case the legality of the legislative body and the enactment not being questioned, plaintiff must show clearly the unconstitutionality of the legislative act of the city council of Youngstown.

Courts must presume that care, study and thought had been exercised by the legislative body that brings into being the ordinance in question; that there is some necessity for the enactment; that the framers had in mind the constitutional limitation upon the enactment and judicial precedent; and especially in Ohio, as counter-distinguished from other states, the power granted to municipalities under Article 18, Section 3, of our constitution and the statutes of the state relating thereto, all of which I shall refer to later, and, further, with a knowledge of the needs and requirements of the municipality.

When the dominant aim of the ordinance is founded upon those powers then the ordinance is valid; otherwise if its substance relates purely to the aesthetic, it comes within the constitutional inhibition and is void.

Further, council is chosen by the people, and when council has spoken by legislative act, to-wit, by ordinance, their enactment is the voice of the people, unless by referendum or court decision, the legislation is annulled, or held unconstitutional. There was no referendum on this ordinance. Therefore, the people speaking through their legally constituted representatives have said in this enactment that an apartment house is one structure, in the part of the city designated by this ordinance, that may be prohibited by police power, in that it increases fire hazards; it is creative of noises that would not have existed in that neighborhood, by autos, taxies, milk wagons, coal wagons, drays, etc., where peace and quiet had formerly prevailed upon the streets and in the neighborhood; that it limits light and air, and it brings with it certain immoralities sooner or later that always attend such structures; there is always the danger of the spread of disease due to the number of inhabitants; obnoxious gases, soot and smoke generally accompany the construction of a large apartment house, and unquestionably the erection of one would lessen the value of real estate in the immediate vicinity. Now

why? It is not sentiment, it is not fancy, it is not the aesthetic, but rather the depreciation of real estate value in the immediate vicinity or community where the apartment is to be built; the public health, safety, general welfare, public convenience, morals, public interest in general, prosperity and tranquility of the community, peace and quietness.

Police power is founded on public necessity and only public necessity can justify its existence. Each member of a community is presumed to be benefitted by that which promotes the general welfare. As a logical sequence in this case, there would be no taking of property of Kahn Brothers. That which is a benefit to the great mass of individuals must have its relative benefit to the complainant. Police power strikes for human rights and the benefit of the many, and against property rights in almost all cases. There never has been a police regulation that did not affect in some manner the constitutional right of property in some phase directly or indirectly.

The power to enact police legislation is incident to government itself, and need not be expressly reserved. When it grants rights of property to an individual or corporate bodies, they take it subject to that great right that is inherent in government—reasonable regulation by police power in a governing body.

Every citizen is restrained, not only as to property rights but in individual rights, for the benefit of the community, state and nation.

From the evidence of witnesses and the exhibits in the case, and from the law, I can come to no other conclusion than that this ordinance is reasonable, and is a valid exercise of police power by a municipality, and that the erection of a structure as contemplated by plaintiff would be detrimental to public health, public safety, the general welfare, public convenience and morals, as well as public interest and general prosperity and tranquility of the community.

This court is constrained to say that though a *nisi prius* court, it cannot agree with the Supreme Court of Kansas and base any part of its judgment on aesthetic grounds. It is the firm conviction of this court that by and through this zoning

34    MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown.    [Vol. 25 (N.S.)

ordinance, health, morals, safety, general welfare and .public convenience are preserved. It is an advanced step that has long been needed for the public welfare, and each advancing step of this kind and character has always met with stubborn resistance; it is the old clash of human rights and welfare against the dollar or property rights.

Zoning is a natural step in the restrictions of livery stables, slaughter houses, building codes, sanitary regulations, bill board regulations and like matters.

Let us review cases presented by the plaintiff in this cause, *Eubank* v. *City of Richmond,* 226 U. S., 137, is not in point; it turned upon the question of a majority of the property owners on a street controlling their neighbor's property by ordinance.

The case 41 S. W., 1094, was controlled by the case of *St. Louis* v. *Hill,* 116 Mo., 527, and relates to the control of the property line on a street, and does not relate to a zoning proposition as presented here.

*People* v. *City of Chicago,* 130 N. E., 609, turned on the point that no showing was made to sustain the ordinance on the ground of health, safety or general welfare, but it was purely an aesthetic proposition. Secondly, the court held that no statutory authority existed in the state of Illinois for such an ordinance; no delegation of power to the municipality for such an ordinance.

The 249 Ill., 236, which this case cited, holds that the right cannot be wholly taken away or limited by the state, except in so far as it may become necessary for individual rights to yield to the higher or greater law of the best interest to the public.

The Mississippi cases cited in the Southern Reporter, and Louisiana cases, like the Virginia and New Jersey cases, all turn on the question either of the inherent defect of the ordinances or the limited power given to municipalities to enact them.

Also the New York cases cited by plaintiff, 153 N. Y., Supplement 143, turn on the point that the Utica charter exceeded the second class city laws of the state.

The Texas case, 235 S. W., 513, turned on the question of

granting discretionary power to an inspector after the consent of three-fourths of the abutting property owners are given.

*Roerig* v. *Minneapolis et al.*, 162 N. W., 477, was governed by the case of *State, ex rel. Lachtman,* v. *Houghton,* 158 N. W., 1017, which is the strongest case that plaintiffs have cited, yet the dissenting opinion in that case and the citations thereunder presents a stronger view to the mind of this court than the opinion of the majority of the court, and this court feels that the dissenting opinion in the 158 N. W., is agreeable to the great weight of authorities in the United States on this question.

The Colorado case, 130 Pac., 828, turned on the principles, as shown by the first and second syllabi, that no expressed authority was given to the municipality to pass the ordinance; and the court clearly intimates that if there had been an expressed authority from the state, the decisions would have been different, or in other words, the ordinance would have been held valid.

The 32d O. C. A., 17, *Meade* v. *Cincinnati,* is not a case parallel with the one at bar, as no relation is shown in that case to the question presented here as to reasonable regulation for the protection of health, safety and general welfare. It turns on the question of aesthetic purposes.

So that in summarizing the brief of plaintiff presented on the question of the unconstitutionality of this zoning ordinance of the City of Youngstown, the court feels that after a review of the cases presented by the defendants, and the cases that the court will hereafter cite, the great weight of authority in this country on zoning is against the plaintiff here.

The defendants' position is sustained in Ohio more strongly by the Constitutional Amendment of 1912, under Article 18, Section 3, than any other state in the Union, except perhaps the state of Massachusetts. It reads:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

36    MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown.    [Vol. 25  (N.S.)

This amendment was limited under the 88 O. S. to Charter cities, but our Supreme Court in the 96 O. S., and succeeding opinions has held that it applies to all municipalities whether chartered or unchartered. The defendants in this case are further supported by the enactment of the Legislature of Ohio, practically supplementing the city planning commission enactments and adding thereto Sections 4366-7 to 4366-12 inclusive, wherein are set forth the operative methods by which city planning commissions, as well as villages, may proceed, giving them—

"The powers to frame and adopt a plan or plans for dividing the municipality or any portion thereof into zones or districts, representing the recommendation of the commission in the interest of the public health, safety, convenience, comfort, prosperity or general welfare, for the limitation and regulation of the height, the bulk and location (including percentage of lot occupancy, setback building lines, area and dimensions of yards, courts and other spaces), and the uses of buildings and other structures and all premises in such zones or districts."

Section 4366-8 in substance governs restrictions in locations of buildings and structures and what regulations may be imposed. Section 4366-9 sets forth that council may regulate and limit height of buildings and structures. Section 4366-10 sets forth when council may regulate bulk and location, percentage of lot occupancy, set-back building lines, etc. Section 4366-11 sets forth districting of zoning based upon classification of buildings and structures; changes within districts; when effective; administrative board; appointment, powers and duties; publication of notice, and public hearings before passing ordinances, etc. Section 4366-12 sets forth that the foregoing sections shall not restrict or impair the power of any municipality under Article 18 of the Constitution of Ohio.

The decisions of the Supreme Court of Ohio in recent cases are most helpful in deciding the question at issue in this case. 97 O. S., at pages 130-8; *State, ex rel. Euclid-Doan Building Co.*, v. *Cunningham, Commissioner and Inspector of Buildings*, first syllabus.

"Ordinances of a municipality reasonably regulating the height, mode of construction and use of tenement houses are a proper exercise of the police power for the preservation and promotion of the safety, health and welfare of the community. A construction of such ordinances should be adopted, where possible, which effectuates the obvious purpose of their enactment."

And on page 138 we find the following:

"Such ordinances are properly enacted for the preservation and promotion of the safety, health and welfare of the community. A construction, thereof, should not be adopted which is supertechnical and results in defeating instead of effectuating the obvious purpose of their enactment.

"It is urged that this is a matter of very serious pecuniary moment to the relator, and that the restrictions imposed deprive it of a large amount of rentals which would otherwise accrue from the use of its property as desired. Nothing seems to be more firmly established than that whatever measures are reasonably necessary to secure and maintain the peace, safety, morals and best interests of the public may be adopted and enforced under the police power, and that private property is at all times 'subservient to the public welfare.'"

Also 98 O. S., 251, *State, ex rel.,* v. *Rendigs;* first syllabus:

"Ordinance No. 457-1917, enacted by the council of the city of Cincinnati, October 2, 1917, forbidding the erection or use of buildings in the residential districts of the city of Cincinnati for the storage, cleaning or renovation of uncured animal hair and the by-products thereof, is not unreasonable nor arbitrary and is a valid exercise of the police power."

Page 259:

"In the instant case, the determination of the question whether or not the ordinance was reasonably necessary for the protection of the health and comfort of those within the locality in question was committed in the first instance to the judgment of the municipal authority. If, in the exercise of the discretion conferred upon it, the municipality acted reasonably, and not arbitrarily, its action is not subject to objection and will not be disturbed."

Page 260:

"We do not think it can be said that council abused the

38  MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown. [Vol. 25 (N.S.)

discretion conferred upon it and that it acted arbitrarily. In the case of *Cusack Co.* v. *Chicago,* 242 U. S., 526, 531, Mr. Justice Clarke uses the following language in reference to the power of local legislative authority in the exercise of the police power, which, we think is pertinent here: 'It (the court) will interfere with the action of such authority only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare.' "

Pages 261-2:

"The ordinance in question was enacted after the permit was issued to the relator. The further claim is made that the relator having expended considerable money in the purchase of land and material, and having entered into certain contracts for the erection of the building, and the building being in course of construction, acquired certain vested rights which could not be affected by the ordinance—that the ordinance could not be retroactive. It is not necessary to devote much time to this proposition, for it seems to be well settled that a permit such as was issued in this case has none of the elements of a contract, and may be changed or entirely revoked, even though based on a valuable consideration, if it becomes necessary to do so in the exercise of a legislative power on subjects affecting the public health or public morals. Cooley on Constitutional Limitations, 283; *Beer Co.* v. *Massachusetts,* 97 U. S., 25; *Fertilizing Co.* v. *Hyde Park, Id.,* 659; *Butchers' Union Slaughter-House & Live Stock Landing Co.* v. *Crescent City Live Stock Landing & Slaughter House Co.,* 111 U. S., 746; *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S., 650; *Moore* v. *Indianapolis,* 120 Ind., 483; and *Dobbins* v. *Los Angeles,* 139 Cal., 179. In the Dobbins case, which is similar to the one under consideration here, it was held: 'The fact that the plaintiff had lawfully commenced its work by purchasing land for a site within the limits allowed by the original ordinance, and had expended money in laying a foundation, and had entered into contracts for the erection of its works, and had secured a building permit from the fire commissioners in pursuance of fire and building ordinances, cannot estop the city from the further exercise of its police power to change the limits so as to make the erection and maintenance of such gas-works unlawful where begun and existing within the changed limits.' "

Also 99 O. S., page 420, *Allion* v. *City of Toledo:*

"Unless there is a clear and palpable abuse of power the court will not substitute its judgment for legislative discretion. The local authorities acquainted with local conditions are presumed to know what the needs of the community demand.

"'Local legislative authorities, and not the courts, are primarily the judges of the necessities of local situations calling for police regulation, and the courts can only interfere when such regulation arbitrarily exceeds a reasonable exercise of authority.' *Schmidinger* v. *Chicago, supra*."

Also 100 O. S., page 456, *Leonard* v. *State of Ohio,* first syllabus:

"The measure of police power available to the government is the measure of public need, whether it apply to health, safety, protection or general welfare, except as qualified by state and federal constitution."

Also 102 O. S., page 305, *Williams et al.* v. *Scudder et al.,* first to fourth syllabus inclusive:

"The measure of the police power of the state is the measure of the public need, limited only by the state and federal constitutions.

"Public health is one of the most vital subjects for the exercise of that power.

"Primarily, the state legislature is the judge of that need, and in the exercise of that judgment *must be given wide discretion.*

"The legislative judgment in this behalf will not be nullified except when it clearly appears that there has been a *gross abuse* of such discretion in undoubted violation of some state or federal constitutional provision."

In many cases cited by defendants, as well as plaintiff, and other cases found that have not been cited by either party, both in the federal courts and other jurisdictions, the court finds very helpful in the determination of this question. In the case 226 U. S., 137, cited by defendant, this court has already indicated that the ordinance under observation in that case was not analagous to the case at bar and turned on the question of one class of property owners controlling property of a neighbor, yet the Supreme Court in that case citing

40      MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown.   [Vol. 25 (N.S.)

the 219 U. S., at page 104 gives some of the general rules on this question that

"Governmental power must be flexible and adaptive. Exegencies arise, or even less conditions peremptory, which may call for or suggest legislation, and it may be a struggle in judgment to decide whether it must yield to the higher considerations expressed and determined by the provisions of the Constitution."

290 U. S., 349-355, sets forth

"The point where particular interests or principles balance cannot be determined by any general formula in advance."

226 U. S., 137:

"But in all cases there is the constant admonition both in their rules and examples when a statute is assailed as offending against the higher guaranties of the Constitution *it must clearly* do so to justify the courts in declaring it invalid."

214 U. S., page 149, in the case at bar:

"We are dealing with an exercise of police power, one of the most essential powers, at times the most insistent, and always one of the least limitable of the powers of government."

200 U. S., 561-2, 588 and 592:

"We hold that police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health or public morals or public safety."

The following quotation is most forceful:

"*Uncompensated obedience* to a regulation enacted for the public safety under the police power of the state *is not taking property without due compensation,* and the constitutional prohibition against the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments.

"And the validity of a police regulation, whether established directly by the state or by some public body acting

under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether really designed and accomplished a legitimate public purpose."

122 N. Y., 268:

"Each member of a community is presumed to be benefitted by that which promotes the general welfare."

A benefit to all is a benefit to this plaintiff; there is no taking then of property which has resulting benefits in general without compensation.

Sedwick on Constitutional Law, 454, after discussing limitations upon the exercise of police power and the prohibition of taking private property without compensation says:

"It is not intended as a limitation of the exercise of those police powers which are necessary for the orderly existence of all governments. It has always been held that the legislature may make police regulations, although they may interfere with the full enjoyment of private property and though nc compensation is given."

152 U. S., 136:

"The state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests."

113 U. S., 27-31:

"Special burdens are often necessary for general benefits."

The 200 U. S., at page 592, cites 95 U. S., 470, 173 U. S., 285, and adopts the following language:

"We hold that the police power of the state embraces regulations designed to promote public convenience or the general prosperity, as well as regulations designed to promote public health, public morals or public safety."

219 U. S., 111:

"If then the legislature of the state thinks that public welfare requires the measure under consideration, analogy and principle are in favor of the power to enact it."

42    MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown.    [Vol. 25  (N.S.)

108 Md., 220, grants legislative control over the height of buildings.

99 U. S., 700-718, 127 U. S., 678-684, adopts the following principle of law:

"*Prima facie,* every act of a legally constituted body is constitutional, and the person who assails an act on that account must clearly establish his contention."

214 U. S., 138-149, gives the definition of police powers as relates to this action.

239 U. S., 394-5:

"A vested interest cannot because of conditions once obtaining be asserted against the proper exercise of police power"

citing 238 U. S., page 67:

239 U. S., 394:

"There must be progress, and in its march private interest must yield to the good of the community."

239 U. S., 295:

"In determining whether a municipal ordinance goes further than necessary to remedy the evil to be cured, this court must, in the absence of clear showing to the contrary, accord good faith to the municipality."

In the 235 S. W., 513, cited by plaintiff, the Supreme Court of Texas gives added weight to the opinion of the justices in Massachusetts, 127 N. E., 525, decided in 1920. The Texas court says with reference to the Massachusetts case:

"That it was passed under expressed amendment and the Constitution of Massachusetts granting to the legislature the expressed power to limit buildings according to their use or construction to specified districts of cities and towns."

And the Texas court further says in concluding, "We have in Texas no such constitutional provision."

127 N. E., 525:

While an opinion of the justices to the legislature of the State of Massachusetts should not under the general rules of construction be accorded the same weight as a case coming to that court in the regular procedure, yet it has never

been reversed and is considered by other states as one of the leading cases and opinions on this question.

242 U. S., 526, at page 531, Justice Clark uses the following language:

"It (the court) will interfere with the action of such authority only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals or to the general welfare."

92 U. S., 113, *Munn* v. *Illinois*:

"Under the powers inherent in every sovereignty, a government may regulate the conduct of its citizens toward each other and when necessary for the public good, the manner in which each shall use his own property,"

And at page 132 Chief Justice Waite says:

"For our purpose we must assume that if a state of facts could exist that would justify such legislation, *it actually did exist when the statute under consideration was passed.*"

The presumption is from the very outstart in favor of the validity of the ordinance.

96 U. S., 521:

"That the appropriate regulation of the use of property is not '*taking*' it within the meaning of the constitutional prohibition."

In *Barbier* v. *Connolly*, 113 U. S., 27, the Supreme Court discussed the question as follows:

"Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though in many respects necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons, similarly situated. is not within the (14th) amendment."

**44**   MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown.   [Vol. 25 (N.S.)

In the case of *Fisher* v. *St. Louis,* 194 U. S., 361, the court held that:

"The ordinance of the city of St. Louis prohibiting the erection of any dairy or cow stable within the city limits without permission of the municipal assembly and providing for permission to be given by such assembly is a police regulation and is not unconstitutional as depriving one violating the ordinance of his property without due process of law or denying him the equal protection of the law."

Also:

"That the fact that some may be favored and some may not, if the ordinance is otherwise constitutional, deny those who are not favored the equal protection of law."

*California Reduction Company* v. *Sanitary Reduction Works,* 199 U. S., 306, may be cited for the purpose that

"An ordinance of competent municipal authorities based upon reasonable grounds for the cremation of garbage and refuse at a designated place as a means for the protection of public health, is not a taking of private property for public use without compensation within the meaning of the Federal Constitution, even though such garbage and refuse may have some elements of value for certain purposes."

In the same volume at page 325 is found the case of *Gardner* v. *Michigan,* which holds that:

"Property rights of individuals must be subordinated to the general good and if the owner of garbage suffers any loss by its destruction, he is compensated therefor by the common benefit secured by the regulation requiring all garbage to be destroyed."

In *Chicago, Burlington & Quincy R. R.* v. *Drainage Commissioners,* 20 U. S., 561 at 592, the Court says:

"We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety. And the validity of a police regulation, whether established directly by the state or by some public body acting under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbi-

trary or reasonable and whether really designed to accomplish a legitimate public purpose.''

While *Telephone & Telegraph Company* v. *City of Los Angeles*, 211 U. S. 265, holds that:

''The rule that every presumption is in favor of the validity of legislation applies to a city ordinance and it will not be held to be unconstitutional within the meaning of the 14th amendment as denying the equal protection of the laws, where the party attacking it as imposing unequal rates upon it does not clearly show an improper classification.''

Or as before contended that the presumption is in favor of the validity of our ordinance.

*Welsh* v. *Swasey*, 214 U. S. 91, is one of the first cases in which the regulation of the construction of a building itself was considered by the court. In that case the court held that—

''Where there is justification for the enactment of a police statute limiting the height of buildings in the particular district, an owner of property in that district is not entitled to compensation for the reasonable interference with his property by the statute.''

The court further holds that in view of the decision of the highest courts of Massachusetts, that the discrimination contended against is based upon reasonable grounds, the same is a proper exercise of the police power and not unconstitutional under the equal protection and due process clauses of the 14th amendment.

*Reinman* v. *City of Little Rock*, 237 U. S. 170, held as follows:

''An ordinance of the city of Little Rock, Arkansas, making it unlawful to conduct the business of a livery stable in certain defined portions of that city is not unconstitutional as depriving an owner of the livery stable already established within that district of his property without due process of law or as denying him equal protection of law.''

Again *Chicago & Alton R. R. Co.* v. *Tranbarger*, 238 U. S. 67, may be cited as authority that the police power of the state cannot be abdicted nor bargained away, is inalienable even

46 MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown. [Vol. 25 (N.S.)

by express grant, and all contract and property rights are held subject to its fair exercise. It embraces regulations designed to promote public convenience or general welfare as well as those in the interest of public health, morals or safety.

*Thomas Cusack Co.* v. *City of Chicago et al.*, 242 U. S. 526, holds that:

"Such an ordinance when dealing with the subject within the police power must be upheld unless shown to be clearly unreasonable, arbitrary or discriminatory. A city exercising the police power may prohibit the erection of bill boards in residence districts in the interest of safety, morality, health and decency of the community. Such a prohibition is not to be deemed unduly discriminatory because not including fences or other structures found less likely to become a source of public injury. He who is injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or property."

Justice Clark in handing down the decision in the foregoing case distinguishes the case of *Eubank* v. *Richmond, supra,* between the ordinance there considered and the one in the case before him in these words:

"The former left the establishment of the building line untouched until the land owners should act and then made the street committee the mere automatic register of that action and gave to it the effect of law. The ordinance in the case at bar absolutely prohibits the erection of any bill boards in the blocks designated but permits this prohibition to be modified with the consent of the persons who are to be most effected by such modification. This is not a delegation of legislative power, but is as we have seen a familiar provision affecting the enforcement of laws and ordinances."

The court has also reviewed the following cases that are in point: *Knack et al* v. *Velick Scrap Iron Co.*, 189 N. W. 54 ('22); *Oppenheim Apparel Co.* v. *Cruise, City Clerk*, 194 N. Y. S. 183; *Fifth Avenue Coach Co.* v. *City of New York*, 83 N. E. 824 at 827; *Daniel Cohen et al* v. *City of Danville* 217 Ill. App. 619; *Patterson* v. *State*, 79 Neb. 132.
219 U. S., 104:

"In general police power extends to all *great public needs.* It may be put forth in aid of what is sanctioned by usage or

held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to public welfare.''

.Without going into detail the court has reviewed the following cases dealing with the problem of building restrictions as relating to this zoning question: *Lincoln Trust Co.* v. *Williams Bldg. Corp.,* 169 N. Y. S., 1045; 229 N. Y. 313 (1920); *Opinion of the Justices of Mass.* 127 N. E. 525 (1920); *City of Des Moines* v. *Manhattan Oil Co.* 184 N. W. 823 (1921); *Ex Parte Quong Wo,* 118 Pac. 714 (1911); *Ex Parte Hadacheck,* 165 Ca. 416, 132 Pac. 529 (1913); *Reinman* v. *Little Rock,* 107 Ark. 174; *City of Spokane* v. *Camp,* 97 Pac. 770 (1908); *Chicago* v. *Stratton,* 162 Ill., 494, 44 N. E. 853 (1893); *People ex rel Busching* v. *Ericson,* 263 Ill. 368, 105 N. E. 315 (1914); *People ex rel Keller* v. *Village of Oak Park,* 107 N. E. 636 (1915); *Shea* v. *City of Muncie,* 148 Ind. 14, 46 N. E. 138; *Pierce Oil Corp.* v. *Hope,* 248 N. S. 498; *People ex rel Morris* v. *Osborn,* 22 N. P. (NS) (Apr. 1920); first tried before Judge Foran in October of 1918, and reported in Law Bulletin of March 15, 1920; *McIntosh* v. *Johnson,* 211 N. Y. 265; *Masher* v. *City of Chicago,* 271 Ill. 288; *Sheldon* v. *Board, of Appeals,* 189 N. Y. S. 722; *Attorney General* v. *Williams.* 174 Mass. 47, 55 N. S. 77 (1899); *Cochran* v. *Preston,* 108 Md. 220, 70 Atl. 113, (1908); *Welsh* v. *Swasey,* 79 N. E. 145 (1907) 214 U. S. 91 (1909); *Town of Windsor* v. *Whitney et al,* 95 Conn. 357, Ill. Atl. 354.; *Ex Parte Quong Wo,* 118 Pac. .714 (1911); *Ex parte Montgomery,* 125 Pac. 1070 (1912); *Ex Parte Hadacheck,* 132 .Pac. 589 (1913); *McIntosh* v. *Johnson,* 211 N. Y. 265 (garage); *Nasher* v. *City of Chicago,* 271 Ill., 288 (moving picture theatre); *City of Spokane* v. *Camp,* 97 Pac. 770, (1908) (Stable).

The Kansas Supreme Court recently upheld an injunction forbidding a property owner in Wichita from putting up, in a residential district, a grocery store that would have run to the property lines at the front and sides of his lot. This was a case under the zoning ordinance adopted by the city of Wichita. The court said:

''While I think that the law and the ordinance in this case will now be upheld by our Supreme Court as consti-

48      MAHONING COUNTY COMMON PLEAS.

Kahn Bros. Co. v. Youngstown.      [Vol. 25 (N.S.)

tutional, there is no doubt in my mind that twenty-five or fifty years ago such a law and ordinance would have been declared unconstitutional.

"Conditions have changed in the last twenty-five years and the police power has been greatly developed in that time.

"The strongest objection made to the law and the ordinance, in the opinion of persons opposed to such law, is that it deprives persons of their property without due process of law and takes private property for public and private use without compensation. In my opinion the law and ordinance act in directly the opposite way * * * Such a law and ordinance prevent a man from erecting a hovel or shack by the side of a beautiful residence and thereby depreciating its value. Heretofore the law has been careful to look after the man who put his property to the poorest use; under such a law and ordinance the law will protect the man who puts his property to the best use."

In the Supreme Court, Judge Dawson, who wrote the opinion for the court said:

"There is an aesthetic and cultural side of municipal development which may be fostered within reasonable limitations. Such legislation is merely a liberalized application of the general welfare purposes of the state and federal constitutions."

The opinion quotes with approval the language of a Minnesota decision:

"It is time the courts recognized the aesthetic as a factor in life. Beauty and fitness enhance values in public and private structures. But it is not sufficient that the building is fit and proper standing alone; it should also fit in with surrounding structures in some degree."

This court could not in any way, shape or form consider the Kansas case as a precedent in this case, or any similar case like it, for it destroys, to the mind of this court, the very foundation and fundamentals of what our Supreme Court and the Supreme Court of the United States have so ably lain down as the principles and the definement of police powers as related to cases of this character.

Therefore, the Court finds from the evidence and law that plaintiff is not entitled to an injunction and dismisses plaintiff's petition at plaintiff's costs.