[S. F. No. 11089.  In Bank.—May 21, 1925.]

M. PARKER et al., Respondents, v. FRANK COLBURN, as Commissioner of Public Health and Safety, etc., et al., Appellants.

[1] MUNICIPAL CORPORATIONS — ORDINANCES — PERMIT TO ERECT A GARAGE.—Where the ordinances of a city require the obtaining from the city council of a permit to conduct or maintain a building as a public garage, in addition to the obtaining of a building permit, as required by the ordinances, neither permit is sufficient without the other.

[2] ID.—OAKLAND CHARTER—PERMITS FOR BUILDING AND CONDUCTING BUSINESS—POLICE POWER.—There is nothing in the charter of the city of Oakland which limits the power of the city to adopt regulations requiring a permit to conduct or maintain a building to be used for a business, lawful in itself, but which may under certain conditions be detrimental to the public health, safety, comfort, and welfare. Such regulatory measures are enacted in the exercise of the police power, and even in the absence of such a charter provision the city is vested with full power to make and enforce such police regulations, as the power is derived directly from section 11 of article XI of the constitution.

[3] ID.—REGULATION OF BUSINESS — DISCRETION — PUBLIC GARAGES.— A lawful business properly conducted and located, not injurious to persons, property, or public welfare, cannot be arbitrarily prohibited by means of regulatory measures; but public garages may, under certain conditions, be nuisances and are subject to regulation under the police power and may be prohibited in certain localities.

[4] ID.—REGULATION OF LAWFUL BUSINESS.—There is a wide distinction between lawful occupations which have no injurious tendencies and those which are lawful in themselves, but which, because of their tendencies or their conduct under certain conditions or in certain localities are likely to injuriously affect the public health, safety, comfort, or welfare, and those in the latter class may be regulated.

[5] ID. — REGULATION OF BUSINESS — DISCRETION IN CITY COUNCIL— VALIDITY OF ORDINANCE.—Where a business belongs to a class which may be regulated, the fact that discretionary power is vested by the ordinance in the city council to grant or refuse a permit for it does not render the ordinance invalid.

1.  Prohibition or regulation of garages, note, L. R. A. 1915D, 603.
3.  See 5 Cal. Jur. 693; 16 Cal. Jur. 669; 6 R. C. L. 219.

[6] ID.—REGULATORY MEASURE—REASONABLENESS OF.—Unless it can be said that a regulatory measure has no just or reasonable relation to the object which it purports to carry out, the decision of the legislative body as to the necessity or reasonableness of the regulation is conclusive.

(1) 38 C. J., p. 75, n. 42.   (2) 38 C. J., p. 73, n. 11.   (3) 28 Cyc., p. 744, n. 11; 29 Cyc., p. 1182, n. 17.   (4) 29 Cyc., p. 1154, n. 11. (5) 38 C. J., p. 73, n. 10.   (6) 28 Cyc., p. 282, n. 98.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Reversed.

The facts are stated in the opinion of the court.

Leon E. Gray, City Attorney, and Markell C. Baer, Assistant City Attorney, for Appellants.

Bernard Silverstein, John W. Collier, Sydney J. Silverstein and Silverstein, Collier & Silverstein for Respondents.

SHENK, J.—This action was commenced to enjoin certain officials of the city of Oakland from enforcing an ordinance the alleged purpose of which was and is to regulate and control the erection and maintenance of public garages in said city. The defendants answered. The plaintiffs moved for judgment on the pleadings. The motion was granted and a judgment of injunction as prayed for in the complaint was entered. From this judgment the defendants have appealed. On the motion for judgment it was admitted that on the seventeenth day of November, 1921, the plaintiffs acquired and now own certain parcels of real property in said city particularly described as lots 34 and 40 and a portion of lots 35 and 36 of the Pacific Theological Seminary Tract Number 2. One parcel fronts on and is known as 3420 Telegraph Avenue, one of the main business thoroughfares of said city. Located on this parcel is a one-story brick building, 60 by 100 feet in dimensions, and which has been used for ten years or more as a public garage. The other parcel fronts on Elm Street, a residential street, and abuts the first parcel at the rear

6.   See 5 Cal. Jur. 712; 6 R. C. L. 240.

thereof. Subsequent to the construction of the brick building on Telegraph Avenue, two wooden sheds were erected on the Elm Street property. These sheds were in the rear of said brick building, but were not physically connected therewith. They were about 16 feet wide, 10 feet high, were entirely open in front and faced inwardly. They were used for the purpose of protection of automobiles from the rain and weather and access thereto was gained through a large door in the rear of the brick garage. On November 21, 1922, the plaintiffs through their representatives made application to the building inspector of the city for a permit to erect a building to be used for public garage purposes, 50 by 100 feet in dimensions, one story in height, with metal skylight, a tar and gravel roof, and with an entrance on Elm Street. Upon presentation of the plans and specifications for the structure the applicant was advised by the inspector that the ordinances of the city of Oakland required a permit from the city council before a person could lawfully construct a building to be used as a public garage. Upon assurance from plaintiff's agent that the proposed structure was not a new building but merely an addition, with alterations and repairs, to the existing brick building fronting on Telegraph Avenue, the inspector issued the building permit under the belief that the city ordinances did not in such cases require a permit from the city council in addition to the building permit. Plaintiffs immediately began to tear down the wooden sheds and by the construction of forms prepared to pour cement for the foundation of the new garage building. Numerous protests were then presented to the city council objecting to the construction of the new building. Pending the determination of said protests, the chief of the fire prevention bureau of the city submitted a report that he had visited the premises and ordered the work stopped on the ground that the permit had not been granted by the city council pursuant to the ordinance requiring the same; that the proposed structure was in reality a new garage (50 by 100 feet) facing on Elm Street; that the location of the garage on Elm Street was in a residential zone and that the building permit theretofore issued calling for additions was merely a subterfuge, and recommended that the building permit be revoked. On December 4, 1922, the commissioner of public

health and safety recommended to the council that the building permit be revoked for the reasons specified in the report of the chief of the fire prevention bureau. The city attorney advised the council that the construction of the building on Elm Street in the manner proposed was the construction of a new garage building in a new location and that the owner should first secure a permit from the city council for the construction and maintenance of the same as a public garage. The council conducted a public hearing on the question of whether or not the building permit should be revoked. The plaintiffs were notified of the hearing and appeared. After such hearing the council adopted a resolution purporting to revoke the said building permit. Thereafter, the plaintiffs made application to the superior court for a writ of review to annul the order of the council revoking said permit. The superior court annulled the order on the ground that the council possessed no authority to revoke the building permit and its action in that respect was in excess of its jurisdiction. The plaintiffs resumed construction work on the Elm Street lot, whereupon their contractor was arrested and charged with a violation of Ordinance No. 418 (N. S.) in that he was proceeding with the erection of a building to be used as a public garage without first having secured a permit therefor from the city council as required by said ordinance. The present injunction proceeding followed. The plaintiffs have not obtained nor have they applied to the council for a permit to construct and maintain a public garage at the location of the proposed new structure and the council has never been called upon either to grant or deny an application for such a permit.

Ordinance No. 418 (N. S.) was adopted February 13, 1913. Section 2 thereof as originally adopted and as in effect at the time of the issuance of the building permit provided as follows: "It shall be unlawful for any person, firm or corporation hereafter to conduct or maintain any building or premises to be used as a public garage . . . without first obtaining a permit therefor from the council, specifying the name of the permittee, the location of the premises to be used, and the amount of gasoline permitted; provided, however, that the council in granting or refusing such permit shall exercise a reasonable and a sound discretion, taking

into consideration the character of the applicant, and the intended location.'' This permit was in addition to the usual building permit required by another ordinance of the city.

It is alleged in the answer, and therefore also an admitted fact, that the plans and specifications presented to the building inspector called for the construction of a class ''C'' building under the provisions of the building ordinances of the city. In 1915 section 5a was added to said Ordinance No. 418 (N. S.), providing as follows: ''All public garages hereafter erected shall be of class 'A' or class 'B' construction, except that public garages of class 'C' construction not more than one story high and having a cement floor will be permitted if all other provisions of this ordinance are complied with.''

It is alleged in the complaint that on the twenty-first day of November, 1922, the building inspector approved the application of the plaintiffs for a permit ''to erect, alter or repair the said building in the manner and form'' provided by ordinance. The answer admits the approval of the application for a permit but alleges affirmatively that the said application was for a permit ''not to make repairs or alter'' the building but ''to erect'' a new public garage building. It is therefore also an admitted fact that the application was for a permit ''to erect'' a new building to be used as a public garage. By the terms of said section 5a the construction of a public garage building of the class ''C'' type was permitted only if all other provisions of said ordinance be complied with. One of the requirements of section 2 thereof was that it should be unlawful for any person, firm, or corporation ''to conduct or maintain any building or premises to be used as a public garage . . . without first obtaining a permit therefor from the council.'' Two things were therefore essential in order that the plaintiffs might lawfully proceed with the construction of the building and the maintenance of the premises to be used for the purpose of a public garage as proposed: (1) A permit from the building inspector pursuant to the building ordinances of the city, and (2) a permit from the city council authorizing the plaintiffs to conduct and maintain the establishment as a public garage. Neither was sufficient without the other. Under said section 5a the building permit

to construct a class "C" building would be entirely ineffectual unless and until the permit from the city council
was obtained to maintain the building as a public garage
pursuant to section 2 of the ordinance. Assuming that the
superior court correctly decided that the building permit
when issued was beyond the power of the municipal authorities to recall it is the proper construction of the ordinances in effect at the time the building permit was issued
that it was of no consequence as to which permit was first
issued, but neither was effectual as authority to the plaintiffs to accomplish their purpose without also the issuance
of the other. Ordinance No. 418 (N. S.) was amended
subsequent to the issuance of the building permit so as to
provide that a permit issued by the building inspector
in accordance with the building ordinance of the city for
any building described in Ordinance No. 418 (N. S.) should
be invalid until the additional permit had been secured
from the city council. Counsel for plaintiffs indulge in
much argument as to the purpose of this and other amendments to said ordinance adopted after the issuance of the
building permit but in view of our conclusions as to the
requirements of the ordinances of the city at the time the
building permit was issued it is not necessary to discuss
the effect of the amendments.

[1] It is contended by plaintiffs that under the Oakland
charter the city does not possess the power to require a
permit for the *use* of a building for a lawful purpose; that
its power is limited by the charter to the regulation of the
construction and maintenance of buildings to the end that
they may not be insecure or unsafe. The contention is
based on section 51 of article IX of the charter and particularly on subsection 11 of that section (Stats. 1911, pp.
1584, 1585). The provisions referred to are as follows:
"Sec. 51. Except as herein otherwise expressly provided,
the council shall exercise all the general powers of the city
herein set forth and all powers now held by or that may
hereafter be given to the city under the constitution or the
laws of the state; but only in the manner and under the
conditions of this charter, and subject to all the provisions
thereof. In addition to all such powers, the council, subject to the provisions and restrictions of this charter, shall
have power: . . . (11) To regulate the construction of and

the materials used in all buildings, . . . ; to prevent the erection and maintenance of insecure or unsafe buildings, . . . and to provide for their summary abatement or destruction; . . . '' It is insisted that the regulations governing the ''construction'' of buildings are embodied in the building ordinance pursuant to which the building permit was issued to the plaintiffs and that by reason of the fact that the city was so authorized and has so acted it has, in effect, within its charter limitations, exhausted its legislative power on the subject and that the use to which the building may be put after the building permit is issued and the building has been constructed is not the concern of the city and cannot be considered here. The contention is untenable for several reasons. [2] There is nothing in the charter which limits the power of the city to adopt regulations requiring a permit to construct or maintain a building to be used for a business, lawful in itself, but which may under certain conditions be detrimental to the public health, safety, comfort, and welfare. Such regulatory measures are enacted in the exercise of the police power (18 Cal. Jur. 839, and cases cited). Subsection (1) of said section 51 of the charter provides that the city council shall have power ''to make and enforce local, police, sanitary and other laws and regulations.'' But even in the absence of such a charter provision the city is vested with full power to make and enforce police regulations. Such power is derived directly from section 11 of article XI of the constitution (*In re Montgomery,* 163 Cal. 457 [Ann. Cas. 1914A, 130, 125 Pac. 1070]).

But it is the contention of the plaintiffs that a public garage is a lawful business; that in the ordinance requiring the permit from the city council there are no prescribed standards or regulations applying indiscriminately to all existing or contemplated public garages, and that without such definitely prescribed standards and regulations the granting or refusal of such a permit is subject to the arbitrary whim and caprice of the council. It is the position of the defendants that under the law of this state the city has the power to require such a permit as the police regulation; that a reasonable discretion is vested in the council to grant or refuse the same, and that in the absence of a showing by the plaintiffs of unreasonable or unlawful or

arbitrary discrimination on the part of the council in denying the permit they are not entitled to the relief sought in this action.

[3] It may be assumed that a lawful business properly conducted and located, not injurious to persons, property, or public welfare, cannot be arbitrarily prohibited by means of regulatory measures (*Application of Dart*, 172 Cal. 47 [Ann. Cas. 1917D, 1127, L. R. A. 1916D, 905, 155 Pac. 63]). Plaintiffs' counsel state that a public "garage business is surely a lawful business, it is not injurious to persons, property or public welfare, otherwise the business itself wherever and however conducted would be a nuisance." But they have truly classified the plaintiffs' business in the statement immediately following, wherein they say: "True, the conduct of the business in certain localities or under certain conditions might become hazardous." If, therefore, its tendency be to increase the fire hazard in the particular locality, or be otherwise injurious to persons or property, it is subject to regulation or prohibition (*Odd Fellows' Cem. Assn.* v. *San Francisco,* 140 Cal. 226 [73 Pac. 987]; *Boyd* v. *City of Sierra Madre,* 41 Cal. App. 520 [183 Pac. 230]). No case seems to have arisen in this state involving the right to require a permit for the construction and maintenance of a public garage, probably for the very obvious reason that because of the inflammatory substances usually kept therein and the unusual noises emanating therefrom, it has been generally conceded that such a business was subject to regulation under the police power and might be prohibited in certain localities and under certain conditions. There are, however, numerous cases in other jurisdictions holding that public garages may, under certain conditions, be nuisances and subject to such regulation. (*Diocese of Trenton* v. *Toman,* 74 N. J. Eq. 702 [70 Atl. 606]; *Hunter* v. *Wood,* 277 Pa. 150 [120 Atl. 781]; *People* v. *Ericsson,* 263 Ill. 368 [Ann. Cas. 1915C, 183, L. R. A. 1915D, 607, 105 N. E. 315]; *People* v. *Village of Oak Park,* 266 Ill. 365 [107 N. E. 636]; *In re McIntosh,* 211 N. Y. 265 [L. R. A. 1915D, 603, 105 N. E. 414]; *Ninth Street Improvement Co.* v. *Ocean City,* 90 N. J. L. 106 [100 Atl. 568]; *Schait* v. *Senior,* 97 N. J. L. 390 [117 Atl. 517]; *Myers* v. *Fortunato,* 12 Del. Ch. 374 [110 Atl. 847]; *General Baking Co.* v. *Board,* 242 Mass. 194 [136 N. E.

245]; *Storer* v. *Downey,* 215 Mass. 273 [102 N. E. 321].)
The plaintiffs' comment on the cases in other states cited
and relied on by the defendants is that in the main they
involved the exclusion of public garages by zoning ordi-
nances. But if this were true as to all of them such fact
would not of itself avoid their effect as authority that a
public garage is such an institution as may be regulated
and even prohibited in the exercise of the police power.
Zoning regulations are promulgated in the exercise of that
power (*Miller* v. *Board of Public Works,* 195 Cal. 477 [38
A. L. R. 1479, 234 Pac. 381]).

The respondents endeavor to bring themselves within such
cases as *Yick Wo* v. *Hopkins,* 118 U. S. 356 [30 L. Ed. 220,
6 Sup. Ct. Rep. 1064, see, also, Rose's U. S. Notes]; *Los
Angeles* v. *Hollywood Cem. Assn.,* 124 Cal. 349 [71 Am. St.
Rep. 75, 57 Pac. 153], and *Matter of the Application of
Dart, supra.* The rules laid down in those cases support
the conclusion that where a business is lawful and has no
injurious tendency any ordinance requiring a license or
permit must prescribe the standards or regulations apply-
ing indiscriminately to all who fall within the same class
and to which all similarly situated may conform. The rule
is well stated in the Dart case, where it is said in the con-
curring, which is in reality the majority, opinion, that "a
law or ordinance by or under which a lawful occupation,
in itself, when properly conducted, in nowise injurious to
persons, property or the public interest, may be absolutely
prohibited at the dictation of any official body without cause
than its own will or desire, is beyond the legislative power
and to that extent void." As declared in *In re Flaherty,*
105 Cal. 558 [27 L. R. A. 529, 38 Pac. 981], the rule in
such cases is "based upon the theory that the lawful, in-
herent rights of men cannot be entirely suppressed or de-
stroyed by statute or ordinance, but can only be *regulated,*
and that all regulations of such rights must be uniform."
It is a commonplace that no man has an inherent or con-
stitutional right to maintain a building or premises or con-
duct a business which is a nuisance or which under certain
conditions may become a nuisance. [4] There is a wide
distinction between lawful occupations which have no in-
jurious tendencies and those which are lawful in themselves,

196 Cal.—12

but which, because of their tendencies or their conduct under certain conditions or in certain localities are likely to injuriously affect the public health, safety, comfort, or welfare. The necessity of regulating lawful occupations falling within the latter class was recognized in *Crowley* v. *Christensen,* 137 U. S. 90 [34 L. Ed. 620, 11 Sup. Ct. Rep. 15, see, also, Rose's U. S. Notes], wherein the court said: "Some occupations by the noise made in their pursuit, some by the odors they engender, and some by the dangers accompanying them, require regulations as to the locality in which they shall be conducted." (*Ex parte Quong Wo,* 161 Cal. 220 [118 Pac. 714]; *Fischer* v. *St. Louis,* 194 U. S. 361 [48 L. Ed. 1018, 24 Sup. Ct. Rep. 673]; *In re Holmes,* 187 Cal. 647 [203 Pac. 398].) [5] The business proposed to be conducted on said premises by the plaintiffs herein belongs to such classification and the fact that discretionary power is vested in the council to grant or refuse a permit does not render the ordinance invalid. In *Lieberman* v. *Van De Carr,* 199 U. S. 552 [50 L. Ed. 305, 26 Sup. Ct. Rep. 144], in referring to cases involving the exercise of such discretion by administrative boards, the court said: "These cases leave in no doubt the proposition that the conferring of discretionary power upon administrative boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the state is not violative of rights secured by the fourteenth amendment." It may be said with equal assurance that this discretion may be properly exercised when the power to exercise the same is lodged, not in a subordinate administrative board but in the city council—the same public body which has ordained that the permit shall be required. (See *Gaylord* v. *City of Pasadena,* 175 Cal. 433 [166 Pac. 348].) [6] Unless it can be said that the regulatory measure has no just or reasonable relation to the object which it purports to carry out the decision of the legislative body as to the necessity or reasonableness of the regulation is conclusive (*Odd Fellows' Cem. Assn.* v. *San Francisco, supra; Boyd* v. *City of Sierra Madre, supra*). No question of arbitrary or unreasonable action on the part of the council in refusing a permit is here involved.

Wherefore, it is concluded that under the law as applied to the admitted facts the judgment should be reversed, and it is so ordered.

Richards, J., Seawell, J., Waste, J., Hart, J., *pro tem.*, Lennon, J., and Lawlor, Acting C. J., concurred.