# CHARLESTON.

STATE ex rel OIL SERVICE COMPANY v. N. S. STARK, INSPECTOR
OF BUILDINGS OF THE CITY OF CHARLESTON et al.

Submitted October 31, 1923.    Decided April 8, 1924.

EXPLOSIVES.—*Ordinance Prohibiting Storage of Explosives in Residence District Held Valid.*

> An ordinance of the city of Charleston prohibiting, within city territory immediately bordering the State capitol grounds and closely built up with valuable residences, the storage of gasoline, naptha, kerosene, gunpowder, dynamite and like explosive materials, should be upheld as a reasonable exercise of the police power of the municipality.

Original mandamus by the State, on the relation of the Oil Service Company, against N. S. Stark, Inspector of Buildings of the City of Charleston, and others, to compel issuance of building permit.

*Writ refused.*

*Brown, Jackson & Knight* and *Harold A. Ritz,* for relator.
*H. D. Rummel* and *Morgan Owen,* for respondents.
*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, *amici curiae.*

LITZ, JUDGE:

Petitioner, Oil Service Company, a corporation, seeks by writ of mandamus to compel N. S. Stark, as Inspector of Buildings of the City of Charleston, and the City of Charleston, a municipal corporation, to issue to it a building permit for the erection of a "service" or "filling station" for the storage in large quantities and vending of gasoline and oils on a lot owned by petitioner situated in the City of Charleston at the northeast corner of California Avenue and Kanawha Street, fronting on Kanawha Street a distance of 40 feet and on California Avenue a distance of 60 feet; such permit having been denied petitioner by the said building inspector on the ground that the storage of gasoline and oils

at the location named is prohibited by two ordinances of the City of Charleston. These ordinances are set up and relied on in respondents' return as defense to this application.

The first of them, adopted April 17th, 1923, extends the ''Restricted Fire Limits'' of the City of Charleston to city territory immediately bordering the new State Capitol grounds, and regulates the construction and maintenance of buildings and the storage of gasoline and other explosives within the prescribed area.

The second, adopted May 29th, 1923, prohibits the storage of gasoline and other explosive and inflammable substances within one hundred and fifty feet of any dwelling, or in residential districts, except upon the written consent of a majority of the neighboring property owners.

Both of these ordinances are assailed by petitioner; the main line of attack, however, being directed against the second, upon the theory that it is not only unreasonable but is made uncertain and discriminatory in its application by delegating to the adjacent property holders legislative authority. It is said, in answer to the charge that the ordinance delegates to the neighboring property owners legislative function, that their action does not relate to the making of the law, but to its execution. It will be observed, nevertheless, whether they are to be considered as exercising legislative or executive powers, their action may be discriminatory among applicants for permits to conduct filling stations. It is not the case of the citizens or property owners of a local community determining whether a law, to be applied uniformly, shall become effective.

But as the first ordinance, in our opinion, is valid, it is unnecessary to consider or pass upon the second. The first ordinance is uniform and certain in application and, therefore, can be questioned only upon the theory of its being unreasonable or unnecessary as a police measure in the interest of public health or public safety.

Chapter 47, Section 28, Code, which by virtue of Section 7 of the Charter of the City of Charleston is added to the charter powers of said city, provides:

> ''The council of such city, town or village, shall have plenary power and authority therein to * * * prevent
>                 96 W. Va.

injury or annoyance to the public or individuals from anything dangerous, offensive, or unwholesome; * * * to abate or cause to be abated anything which, in the opinion of a majority of the whole council, shall be a nuisance; to regulate the keeping of gunpowder and other combustibles; * * * to make regulations guarding against danger or damage by fire''.

Section 7 of the Charter of the City of Charleston in part provides:

''The council of said city shall have, and is hereby granted power * * * to prohibit within the city, or within two miles thereof, slaughter houses, soap or glue factories, and houses and places of like kind, *and any other thing or business dangerous, unwholesome, unhealthy, offensive, indecent or dangerous to life, health, peace or property*; * * * to provide for and regulate the safe construction, inspection and repairs of all public and private buildings, bridges, basements, culverts, sewers, or other buildings or structures of any description; * * * to regulate, restrain or prohibit the erection of wooden or other buildings within the city; to regulate the height, construction and inspection of all new buildings hereafter erected, and the alteration and repair of any buildings already erected or hereafter erected in said city, and to require permits to be obtained for such buildings and structures, and plans and specifications thereof to be first submitted to the building inspector; * * * *to establish fire limits and to provide the kind of buildings and structures that may be erected therein, and to enforce all needful rules and regulations, to guard against fire and danger therefrom;* * * * to prevent injury or annoyance to the business of individuals from anything dangerous, offensive or unwholesome; to abate or cause to be abated all nuisances; * * * *to regulate or prohibit the keeping of gunpowder and other combustible or dangerous articles;* to regulate or prohibit the use of firecrackers or other explosives or fireworks, and all noises or performances which may be dangerous, indecent or annoying to persons or tend to frighten horses or other animals; * * * to organize and maintain fire companies and departments and to provide necessary apparatus, engines and implements for the same, and *to regulate all matters pertaining to the prevention and extinguishment of fires;* to make proper regulations for guarding against danger and

damage from fires, water or other elements; * * * to promote the general welfare of the city, and to protect the persons and property of citizens therein; * * * to preserve and protect the peace, order and safety and health of the city and its inhabitants; * * * to prescribe and enforce ordinances and rules for the purpose of protecting the health, property, lives, decency, morality, cleanliness and good order of the city and its inhabitants; * * * and to punish violations of all ordinances.''

A former ordinance of the City of Charleston establishing fire limits has been upheld by this Court as proper police regulation. *Charleston* v. *Reed*, 27 W. Va. 681; and such ordinances are generally recognized as valid. 19 R. C. L. p. 830; 13 L. R. A. p. 481; 38 L. R. A. 170, 174.

The ordinance of April 17th, 1923, extending the restricted fire limits of the city theretofore established by Section 3, Part II, Code of the City of Charleston, (Barnes' 1921 Ed. p. 329), in part follows:

"WHEREAS, the State of West Virginia has acquired all the property in those four certain blocks of the City of Charleston bounded on the west by Duffy Street, on the north by Washington Street, on the east by California Avenue and on the south by Kanawha River, and proposes to construct, equip, maintain and use thereon a State capitol building or buildings, to replace the capitol building heretofore destroyed by fire; and,

"WHEREAS, the Council deems it desirable that said capitol buildings, when constructed, should be protected so far as possible from damage by fire and made safe against dangers to life and health; and that the said buildings and their surroundings should be made safe in all respects against danger to life, health and property, in so far as is possible under the police power of the State as vested in the City of Charleston by the provisions of its charter; Now, Therefore,

"BE IT ORDAINED BY THE COUNCIL OF THE CITY OF CHARLESTON:

"SECTION 1. That the restricted fire limits of the City of Charleston be and they are hereby extended so as to include, in addition to the territory now included therein, the following boundary: beginning at low water mark on the north side of Kanawha River, 150 feet east of Veasey Street; thence by a line parallel with

Veasey Street and 150 feet east of the same to the line
of Kanawha & Michigan Railway; thence with said
Railway to a point 150 feet west of Elizabeth Street;
thence by a line parallel with Elizabeth Street and 150
feet west of the same to low water mark on the Kan-
awha River; thence with the said river to the place of
beginning.

"SECTION 2.  No building of frame construction
or building of Class One shall hereafter be erected, al-
tered or removed within the restricted limits set out in
section one hereof.  No building or other structures, ex-
cept those of fireproof construction, as defined in the
Building Code, shall be erected, altered or removed
within said limits, except dwellings designed for the
use of a single family and of not more than two and one-
half stories in height.

"SECTION 4.  The storage of gasoline, naptha, kero-
sene, gunpowder, dynamite and like explosive materials
within the restricted limits, set out in section one, is
hereby declared unlawful and shall not be permitted,
except the storage of kerosene and naptha in such quan-
tities as may be necessary for domestic use and the stor-
age of gasoline for domestic use, or for use in motor
vehicles, but not to exceed twenty-five gallons in any
one building at the same time.  The storage, handling
and use of such substances shall further be subject to
all provisions of law and the ordinances of the City
of Charleston governing the same."

There seems to be no question that a city may pass an
ordinance regulating the keeping, storage or transportation
of gasoline or other explosives, including dangerous oils.
The right of a municipality to pass such an ordinance is
based on the police power as delegated by the legislature and
unless arbitrary or unreasonable, such a regulation is uni-
formaly held to be constitutional and valid.  Ann. Cas.
1918-E, 145, and numerous cases cited.

"The adoption of ordinances and measures that are neces-
sary for the protection of the public is within the reasonable
discretion of the municipal authorities, and ordinarily courts
will not inquire into the expediency of legislation of this
character, unless it is unreasonable and arbitrary, having no
relation to the legitimate exercise of the police power, and
interferes with personal and property rights.  Reasonable

regulations, not oppressive or arbitrary, *operating uniformly,* for the keeping within the city of oil, gasoline, gunpowder and the several kinds of explosive, inflammable, combustible, and dangerous articles, promulgated in good faith, are therefore invariably sustained." 7 McQuillin Municipal Corporations, Supplement, Sec. 952.

Every intendment is to be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health and safety, and it is not the province of the courts, except in clear cases, to interfere with the exercise of power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people of the community. *Dobbins* v. *Los Angeles,* 195 U. S. 223, 25 Sup. Ct. 18, 49 U. S. (L. Ed.) 169; *Dreyfus* v. *Boone,* 88 Ark. 360, 114 S. W. 718; *Pierce Oil Corp.* v. *Hope,* 127 Ark. 38, Ann. Cas. 1918-E 143. In the last case the court upheld a city ordinance prohibiting the keeping of gasoline or any of the other products of petroleum, or any other inflammable or explosive oil, gas or substance, within 300 feet of any dwelling house, store room or other like structure, within the corporate limits of said city, in a quantity greater than 60 gallons at one time, with a proviso that underground tanks would be permitted to carry not to exceed 600 gallons at one time.

The Supreme Court of Illinois sustained a municipal ordinance of the city of Danville prohibiting the keeping of gasoline or any other inflammable or explosive oils within 1000 feet of any dwelling, store room, building, barn, shed, or other like structure within the corporate limits, in a greater quantity than five barrels of fifty gallons each, even though applied to a plant in operation before the majority of the buildings within the prescribed distance were erected. *Standard Oil Co.* v. *Danville,* 199 Ill. 50, 64 N. E. 1110.

A police regulation which limits the quantity of explosive fluid (gasoline) which may be stored within the city limits of Washington to fifty gallons, and requires it to be stored outside of buildings in a tank buried under ground, was held reasonable and valid in the case of *Cahill* v. *District of Columbia,* 26 App. Cases D. C. 163.

In *Davenport & Morris* v. *Richmond City,* 81 Va. 636, it

was held that the storage of gunpowder in a city being dangerous, its regulation is a matter within the power of the municipal authorities, and their judgment as expressed in an ordinance requiring the removal of powder magazines is conclusive upon the courts. The plaintiff's predecessor in title had, in 1867, for value obtained from the city council of Richmond a lot of land on the outskirts of the city, to be used by them as the location of a powder magazine, subject to the regulations of the council. In 1882 an ordinance was passed without the knowledge of plaintiffs, declaring their magazines dangerous to life and property and directing them to be removed at the expense of the owners to some more remote locality. This ordinance was upheld as a valid exercise of the police power.

An ordinance held valid in *City of Crowley* v. *Ellsworth* (La.) 38 Sou. 199, prohibited the storage of more than two barrels of gasoline, coal oil or other refined oils of an explosive nature within the city limits.

The plaintiff, in *Waters-Pierce Oil Co.* v. *New Iberia*, 47 La. Ann. 863, 17 Sou. 343, was compelled to remove from the corporation limits iron tanks used by it for the storage of large quantities of oil, upon the passage of an ordinance declaring it a nuisance to keep or store within the corporation limits of the town any explosive or oily inflammable materials dangerous to the safety of life and property in greater quantity than necessary to supply ordinary or every-day usage or for the demands of a retail selling business.

In *Union Oil Company* v. *City of Portland*, 198 Fed. 441, an ordinance of the city of Portland, Oregon, was involved, which designated certain locations in the city where fuel oil might be stored for sale and distribution and prohibited its storage for such purposes elsewhere. After complainant, an oil company, had purchased a tract of land in one of the localities where storage was permitted and prepared to build a storage plant thereon, the council repealed the ordinance and passed another which left complainant's property within the restricted district. The power of the council to reconsider the question after passage of the first ordinance was upheld, the court saying that one who buys property within designated places, intending to use it as a storage place for fuel

oil, is not deprived of property without due process of law, nor is he denied the equal protection of the laws, by such change in the ordinance as makes the business in that place illegal. In this case it was said: "The courts will not inquire into the expediency of legislation passed in the exercise of the police power, nor the reasons which prompted its adoption, so long as it appears that the legislative authority acted in good faith in the exercise of a reasonable discretion, and not arbitrarily. Nor will they overthrow such legislation merely because they differ with the law making power as to its efficiency, when opinion is divided on the question". *Lake View* v. *Rose Hill Cem. Co.,* 70 Ill. 191; *Pierce Oil Corp.* v. *Hope,* cited; *Jamieson* v. *Indiana Natural Gas & Oil Co.,* 28 N. E. 76.

The courts take judicial notice that gasoline and other inflammable petroleum products, gunpowder and dynamite, are dangerous and explosive, as a matter of common knowledge. *Storer* v. *Downey,* 215 Mass. 273, 102 N. E. 321; *Whitemore* v. *Baxter Laundry Co.,* 181 Mich. 564; *Des Moines* v. *Oil Co.,* 193 Ia. 1096, 23 A. L. R. 1322; *O'Hara* v. *Nelson,* 71 N. J. Eq. 161, 63 Atl. 836; *Jamieson* v. *Indiana Natural Gas & Oil Co., supra.*

Large quantities of gasoline and oils are daily consumed by the ever increasing number of motor vehicles in use. To protect the public from danger and damage by explosions and fires therefrom is the duty of municipal authorities, and the city council of Charleston is without doubt fully authorized under its charter to adopt such reasonable and proper regulations and restrictions governing the use and storage of explosive and inflammable materials as it may in its discretion deem necessary. It is for the council, not the Court, to exercise the discretionary power in prescribing such restrictions.

Although it is unnecessary for a legislative body to give reasons for its enactments, (Dill. Mun. Corp. 3d Ed. sec. 318, note 2; Elliott, Mun. Corp. p. 183; *City of Crowley* v. *Ellsworth, supra; Coats* v. *The Mayor etc., New York,* 7 Cow. 585), the council has prefaced the ordinance under consideration with a statement showing that it is the desire and intention of the city authorities to protect from fire or dam-

° age from inflammable and explosive materials the new and expensive capitol buildings of the State of West Virginia, now under construction to replace the former capitol buildings destroyed by a fire of unknown origin in 1921 at a great loss to the people of the State. To this end the ordinance of April 17th, 1923, was enacted. The location of the proposed filling station is only fifty feet from the capitol grounds, and the restricted area covered by the ordinance is built up with valuable residences. We are referred to no authority, by able counsel for petitioner, in conflict with these holdings.

We are clearly of opinion, therefore, that the ordinance of April 17th, 1923, is a reasonable and proper exercise of the discretionary power of council to protect the interests and welfare of the public.

The writ will be refused.

*Writ awarded.*