SCOTT et al. v. CHAMPION BLDG. CO. et al.
No. 10722.

Court of Civil Appeals of Texas. Dallas.
April 5, 1930.

Rehearing Denied May 17, 1930.

L. S. Stemmons and Smithdeal, Shook, Spence & Bowyer, all of Dallas, for appellants.

D. A. Frank, of Dallas, for appellees.

**LOONEY, J.**

Appellants sued appellees to enjoin the erection of a gasoline and oil filling station on lot 1 in block 41 of Winnetka Heights addition to the city of Dallas, and the appeal is prosecuted from the judgment below sustaining a general demurrer and dismissing the suit.

The question presented is as to the sufficiency of the petition; hence its allegations, with reasonable intendments, will be accepted as true.

Appellants based their right to relief on three grounds, viz.: (a) That the property upon which appellees were engaged in erecting the filling station is situated within a restricted dwelling district; (b) that the filling station was being erected in violation of an ordinance of the city of Dallas, which prohibited the erection of an oil and gas station within 100 feet of a frame dwelling or residence; and (c) that appellees were violating a valid zoning ordinance adopted the 11th day of September, 1929, which placed the land of appellees in an apartment district, within which the erection and maintenance of filling stations and other business houses and businesses were and are prohibited.

With reference to the first ground, appellants alleged, in substance, that Charles O. Knowles, the owner of a large tract of land situated in Oak Cliff, the western edge of the city of Dallas, platted same as Winnetka Heights addition to said city, indicating on said plat the different blocks and lots with their numbers, the streets and alleys, and had the plat recorded in the office of the county clerk of Dallas county; that later the Russell Realty Company purchased 16 blocks of this addition, including block 41, in which are located the lots claimed respectively by appellants and appellees; that the realty company decided to develop an exclusive residential district, adopted the Knowles plat with minor changes, had streets paved, sidewalks built, and water and sewer lines laid, and sold lots according to said map; that a general scheme was adopted, restricting buildings on lots to dwellings and outhouses of a minimum value to be located so as to preserve a harmonious plan and symmetrical arrangement; that this purpose of the realty company was widely advertised in newspapers and by word of mouth, and lots in said district were greatly enhanced in value, and purchasers were induced to buy by reason of the assurance that the district would be protected from the intrusion of commercial buildings and businesses; that said scheme contemplated the insertion in

each deed, conveying lots, the restrictions above indicated, and the realty company did in fact convey each lot with reference to said map, and placed in each deed restrictions to the effect that the lot should never be sold to negroes, that no building or improvement should be erected thereon except dwellings and outhouses of a minimum value, varying according to location, and that improvements should be so located as to conform to building lines; that the company sold substantially all lots in said addition owned by it, and placed in each deed, including the deeds under which both appellants and appellees claim title, the above-mentioned restrictions; that the lots sold have been improved and are largely occupied by home owners. the building scheme has been carefully preserved, and no violation thereof committed; that appellants' predecessors in title purchased relying on representations that similar restrictions would be placed in all deeds to lots sold in the district, and each appellee, at the time he or it acquired his or its interest in lot 1 in block 41, knew of the building scheme, and that each lot in the residential section, including the lots owned and claimed respectively by appellants and appellees, were perpetually restricted to dwellings and outhouses, and had notice, actual or constructive, that the deed from Russell Realty Company to L. W. Leeds, under whom they claim title, as originally delivered, contained substantially all of said restrictions.

These allegations show that the Russell Realty Company (common grantor) adopted a general building scheme or plan intended to enhance the attractiveness and value of lots in said addition for residential purposes; that each lot sold by it was subjected to the restrictions and therefore burdened with an easement in favor of the owners of other lots, that appellees acquired their respective interests in lot 1 in block 41 thus restricted and burdened with knowledge or notice of these facts.

This case, in our opinion, is ruled by the doctrine announced in Couch v. Southern Methodist University (Tex. Civ. App.) 290 S. W. 256, 259. In disposing of that case, Chief Justice Jones announced the doctrine applicable to the case at bar; he said: "It may be stated generally that, where a common grantor opens up a tract of land to be sold in lots and blocks, and, before any lots are sold, inaugurates a general scheme of improvement for such entire tract intended to enhance the value of each lot, and each lot, subsequently sold by such grantor, is made subject to such scheme of improvement, there is created and annexed to the entire tract what is termed a negative equitable easement, in which the several purchasers of lots have an interest, and between whom there exists mutuality of covenant and consideration. 18 C. J. 394, and authorities cited in note."

It was further said that purchasers of lots burdened with such an easement could enforce the restrictions in a court of equity, against other purchasers of lots similarly burdened, provided they purchased with notice, actual or constructive, of the existence of such easement. Although a writ of error was granted in this case and the same was reversed, but on an entirely different ground, the doctrine announced above was in no way modified or disproved. See (Tex. Com. App.) 10 S.W.(2d) 973. This doctrine is abundantly sustained by authorities the country over. See annotation under the title "Who may enforce restrictive covenant or agreement as to use of property." 60 A. L. R. 1227, 1232.

Appellees contend, however, that our decisions in Pierson v. Canfield, 272 S. W. 231, 233, and Johnson v. Poteet, 279 S. W. 902, 903, are in point and decisive against the contention of appellants. We cannot agree that either case is in point, nor that the propositions on which they were determined are involved in the instant case. In the Pierson-Canfield Case we held that plaintiffs failed to prove the existence of a uniform or common building scheme, and in the Johnson-Poteet Case we held that, because the common grantor sold adjoining lots unrestricted as to use, upon which a garage and other businesses were located and operated, defendant's lot was rendered valueless as residential property, and that under these circumstances it would be inequitable to forbid him the use of his lot in like manner for business purposes. We hold, therefore, that appellants' allegations in regard to their first ground for relief stated a good cause of action.

As to their second ground, appellants alleged, in substance, that at the time the suit was filed appellees were engaged in erecting on their lot a gas and oil filling station in violation of two valid ordinances of the city of Dallas, to wit, one that prohibited the erection, in residential districts, of an oil or gas station within 100 feet of a frame building or house; the other that prohibited the erection or alteration of a house within the city, without having first obtained a permit from the building inspector. Without marshaling different relevant provisions of the city charter, we think ample authority will be found that authorized the enactment of these ordinances, that each bears a rational relation to the safety and general welfare of the community, and were therefore valid enactments.

■■ Courts judicially know that gasoline and other inflammable petroleum products are explosive and constantly menace the safety of persons and property, wherever stored or kept for sale. While it cannot be correctly said that a gasoline station is a nuisance per se, yet, when erected and maintained at a place prohibited by a reasonable regulatory ordinance, it may be properly considered a

nuisance, by reason of its prohibited location, and dealt with accordingly. See City of Wichita Falls v. Continental Oil Co. (Tex. Civ. App.) 5 S.W.(2d) 561; City of San Antonio v. Robert Thompson (Tex. Civ. App.) 23 S.W.(2d) 796; Pierce Oil Corp. v. City of Hope, 127 Ark. 38, 191 S. W. 405, Ann. Cas. 1918E, 143. Affirmed on writ of error by the United States Supreme Court, 248 U. S. 498, 39 S. Ct. 172, 63 L. Ed. 381; Morgan v. Board of Com'rs, 104 N. J. Law, 13, 139 A. 718; State ex rel. v. Stark, 96 W. Va. 176, 122 S. E. 533; Standard Oil Co. v. City of Danville, 199 Ill. 50, 64 N. E. 1110; In re McIntosh, 211 N. Y. 265, 105 N. E. 414, L. R. A. 1916D, 603.

■ We are of opinion, however, that these ordinances were impliedly repealed by the comprehensive zoning ordinance adopted by the City of Dallas on September 11, 1929, which will be hereafter considered. This ordinance covers the entire subject-matter of the earlier ordinances, and it is evident the city commissioners intended that they should be superseded by the later ordinance, although we find therein no language of express repeal; but, in view of the comprehensive provisions of the zoning ordinance, covering as it does the entire field of the prior ordinances, we hold that they were impliedly repealed by the later. 25 R. C. L. 915 § 167.

■ Appellants' third ground for relief is based upon the general zoning ordinance just mentioned. This ordinance was adopted by the city under authority of chapter 283, Acts of the Regular Session of the 40th Legislature (Vernon's Ann. Civ. St. arts. 1011a–1011j), that authorized cities and incorporated villages to adopt comprehensive zoning regulations.

Appellants allege further that the voters of the city of Dallas adopted the provisions of this statute as a part of the charter of the city, and that its commissioners, after taking the necessary steps, enacted the zoning ordinance above mentioned, a printed copy of which was attached to, and made a part of, appellants' petition. This ordinance divided the city into six classes of use districts—that is, dwelling districts, apartment districts, local retail districts, commercial districts, first manufacturing districts, and second manufacturing districts, and also divided the city into six classes of area districts, designated as A, B, C, D, E, and F, respectively. It contains provisions designed to furnish due process of law to the citizen whose interest may be affected by its enforcement. The plan is comprehensive, and at great length restricts and regulates the location of trades, industries, apartment houses, apartments, dwellings, and other buildings, and also regulates and restricts the lot area to be built upon in any particular instance. Appellants alleged further that the lots belonging to both parties to the litigation were placed by said ordinance in an apartment district, within which it was made unlawful to build, locate, or maintain an oil or gas station or other business buildings or businesses.

The problem of zoning cities and towns in the interest of health, morals, safety, or general welfare of the public is among the most important of the many problems with which municipalities are required to deal.

A comprehensive zoning ordinance necessarily divides a city into certain districts, prescribes for each different regulations having to do with the architectural design of structures, the area to be occupied, and the use to which the property is to be devoted.

Ordinances creating residential districts, and excluding therefrom businesses and trades, have been adopted in many places, and, while courts of different states are somewhat in conflict, the decided weight of authority is in favor of their validity. The leading case on the subject is Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016. In that case the court had under consideration a comprehensive zoning ordinance adopted by the village of Euclid, a suburb of the city of Cleveland, Ohio, similar in structure and enforcing provisions, to the ordinance under consideration.

The ordinance of Euclid was assailed on grounds that it was in derogation of the "due process of law provision," of the Federal Constitution, and of certain provisions of the Constitution of the state of Ohio. After detailing at length the salient provisions of the ordinance, the court proceeded with a lengthy discussion, in which the authorities were reviewed, and among other things said:

"Building zone laws are of modern origin. They began in this country about 25 years ago. Until recent years, urban life was comparatively simple; but, with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for, while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions

which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the meaning, but to the application of constitutional principles, statutes and ordinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall. The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities. In solving doubts, the maxim 'sic utere tuo ut alienum non laedas,' which lies at the foundation of so much of the common law of nuisances, ordinarily will furnish a fairly helpful clew. And the law of nuisances, likewise, may be consulted, not for the purpose of controlling, but for the helpful aid of its analogies in the process of ascertaining the scope of, the power. Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. Sturgis v. Bridgeman, L. R. 11 Ch. 852, 865. A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. Radice v. New York, 264 U. S. 292, 294, 44 S. Ct. 325, 68 L. Ed. 690.''

The ordinance, in its general scope and dominant purposes, was sustained by the court as a valid exercise of the police power, but its detailed provisions were left without comment, to be dealt with as cases arise in which they are directly involved. On this point the court used the following language: ''It is true that when, if ever, the provisions set forth in the ordinance in tedious and minute detail, come to be concretely applied to particular premises, including those of the appellee, or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable.''

Comprehensive zoning ordinances, such as we have under consideration, have been sustained by the courts of last resort in a majority of the states of the Union, as shown by the following citations to wit: Arkansas, Herring v. Stannus, 169 Ark. 244, 275 S. W. 321; Little Rock v. Pfeifer, 169 Ark. 1027, 277 S. W. 883; Arizona, City of Tucson v. Arizona Mortuary, 272 P. 923; California, Miller v. Board of Public Works of City of Los Angeles, 195 Cal. 477, 234 P. 381, 38 A. L. R. 1479 (writ of error dismissed by U. S. Sup. Ct., 273 U. S. 781, 47 S. Ct. 460, 71 L. Ed. 889); Ex parte White, 195 Cal. 516, 234 P. 396; Zahn v. Board of Public Works, 195 Cal. 497, 234 P. 388; Fourcade et al. v. City and County of San Francisco et al., 196 Cal. 655, 238 P. 934; Dwyer v. City Council of Berkeley, 200 Cal. 505, 253 P. 932; Colorado, Colby v. Board of Adjustment, 81 Colo. 344, 255 P. 443; Connecticut, State v. Hillman, 110 Conn. 92, 147 A. 294; Florida, State v. Fowler, 90 Fla. 155, 105 So. 733; Illinois, Deynzer v. City of Evanston, 319 Ill. 226, 149 N. E. 790; Aurora v. Burns, 319 Ill. 84, 149 N. E. 784; Iowa, Anderson v. Jester, 206 Iowa, 452, 221 N. W. 354; Des Moines v. Oil Co., 193 Iowa, 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322; Kansas, Ware v. Wichita, 113 Kan. 153, 214 P. 99; Kentucky, City of Monticello v. Bates, 169 Ky. 258, 183 S. W. 555; Slaughter v. Post, 214 Ky. 175, 282 S. W. 1091; Louisiana, State ex rel. Civello v. New Orleans, 154 La. 271, 97 So. 440; State ex rel. Giangrosso v. City of New Orleans, 159 La. 1016, 106 So. 549; Maine, Opinion of the Justices, 124 Me. 501, 128 A. 181; Massachusetts, Inspector of Buildings of Lowell v. Stoklosa, etc., 250 Mass. 52, 145 N. E. 262, 265, 269; Opinion of the Justices, 234 Mass. 597, 127 N. E. 525; Michigan, Dawley v. Collingwood, Ingham Circuit Judge, 242 Mich. 247, 218 N. W. 766; Minnesota, American Wood Products Co. v. Minneapolis (D. C.) 21 F.(2d) 440; State v. Houghton, 171 Minn. 231, 213 N. W. 907; Missouri, State v. Christopher, 317 Mo. 1179, 298 S. W. 720; Nebraska, Pettis et al. v. Alpha, etc., 115 Neb. 525, 213 N. W. 835; New Hampshire, Sundeen v. Rogers, 141 A. 142, 57 A. L. R. 950; New York, Lincoln Trust Co. v. Bldg. Corp., 229 N. Y. 313, 128 N. E. 209; North Dakota, Bismarck v. Hughes, 53 N. D. 838, 208 N. W. 711; Ohio, Pritz v. Messer, 112 Ohio St. 628, 149 N. E. 30; Oklahoma, De Lano v. Tulsa (C. C. A.) 26 F.(2d) 640; McCurley v. El Reno, 138 Okl. 92, 280 P. 467; Oregon, Kroner v. Portland, 116 Or. 141, 240 P. 536; Pennsylvania, Appeal of Ward, 289 Pa. 458, 137 A. 630; Petition of Liggett, 291 Pa. 109, 139 A. 619; Appeal of Kerr, 294 Pa. 246, 144 A. 81; Virginia, Gorieb v. Fox, 145 Va. 554, 134 S. E. 914; West Virginia, Welch v. Mitchell, 95 W. Va. 377, 121 S. E. 165; Wisconsin, Bouchard v. Zetley, 196 Wis. 635, 220 N. W. 209.

The authorities just cited, as well as those cited in connection with our discussion of appellants' second ground for relief, fully sustain the validity of the provisions of the zon-

ing ordinance applicable to the case under consideration. We hold, therefore, that the provisions of said ordinance creating residential and departmental districts, and forbidding the establishment and maintenance therein of gasoline filling stations, bear a rational relation to the health, safety, and general welfare of the community, and their enactment by the city was, in our opinion, the proper exercise of its police power.

It is possible and entirely probable that the comprehensive zoning ordinance contains invalid provisions, which may be stricken down as the occasion arises, without affecting the validity of other unobjectionable provisions. The city commissioners provided for just such contingency in section 25 of the ordinance, which reads:

"*Validity of Ordinance.* If any section, paragraph, subdivision, clause, phrase or provision of this ordinance shall be adjudged invalid or held unconstitutional, the same shall not affect the validity of this ordinance as a whole, or any part or provision thereof, other than the part so decided to be invalid or unconstitutional."

It may be contended that our decision conflicts with the holding of the Supreme Court in the Spann Case, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387. We find nothing in the able discussion of the general subject by Chief Justice Phillips that in any way conflicts with our holding here, for throughout the lengthy opinion in the Spann Case Judge Phillips asserted over and over again, in language of adjudication or of dictum, it being immaterial which, that the police power is founded on public necessity, and may be invoked by the government to abridge the right of a citizen to use his private property when such use will endanger public health, safety, comfort, or welfare. Under that doctrine we sustain the validity of the general zoning ordinance in so far as its provisions are applicable to the facts of this case.

■ But appellees contend, in effect, that the matter of enforcing the ordinances pleaded by appellants (penal in nature) is for the city of Dallas alone, and not for appellants, hence they are not entitled to injunctive relief to prevent their violation.

On this phase of the case appellants alleged in substance that, if the oil station is erected and operated, they will suffer financial injury and irreparable damage, in that the residential character of appellants' neighborhood will be destroyed; that it will be changed from an exclusive, desirable residential neighborhood into a semibusiness district, no longer desirable for home owning and dwelling purposes; that their property, and the property of other residents in the neighborhood, will be greatly depreciated, and they will be compelled either to sell at a sacrifice or continue to live in a neighborhood no longer de-

sirable for home purposes, and appellant, Mrs. Scott, pleaded specially that the construction and operation of the oil station immediately adjacent to her property will subject her home inevitably to noises, odors, and the confusion attendant upon the operation of an oil and gas station, and will practically destroy her home for residential purposes, and subject her to great inconvenience and financial loss; that, if the station is permitted upon said lot, the whole plan and scheme under which such property was developed will be nullified and frustrated; that the depreciation in the value of their properties, while real and substantial, is difficult of precise estimation, in that damages are inadequate to compensate for the inconvenience, annoyances, and inquiry which will result from the construction and operation of the oil station, hence they are without an adequate remedy at law; that the construction of said filling station nearer than 100 feet to the dwelling of appellant Mrs. Scott will subject it to the hazard of fire and explosion arising from the storing of gas and oil in said station; that practically all the residences in block 41 are of wooden structure, on lots generally only 50 feet in width, the houses in close proximity; that the location of the gas station is upon the corner lot at the north end of said block, in a direction from which the prevailing winds blow a large part of the year, with the attendant danger of explosion and fire from the handling of oil and gas and other highly combustible material at said station, will subject all houses in the block, and particularly appellants', to conflagration and possible destruction.

These allegations unquestionably show that a special property damage will result to appellants, other and beyond that which will be suffered by the general public, hence under a well-settled doctrine of equity they are entitled to prevent by injunction the violation of the ordinance. Chimene v. Baker, 32 Tex. Civ. App. 520, 75 S. W. 330; American Const. Co. v. Seelig (Tex. Civ. App.) 131 S. W. 655, 658, affirmed by Supreme Court, 104 Tex. 16, 133 S. W. 429; Featherstone v. Independent, etc., Ass'n (Tex. Civ. App.) 10 S.W. (2d) 124, 127, 128; Kaufman v. Stein, 138 Ind. 49, 37 N. E. 333, 334, 46 Am. St. Rep. 368; Pritz v. Messer, 112 Ohio St. 628, 149 N. E. 30; Holzbauer v. Ritter, 184 Wis. 35, 198 N. W. 852; Hazard v. Volger (C. C. A.) 58 F. 152, 156; 11 R. C. L. 672, § 26.

■■ Appellees contend further that their right to erect and maintain the filling station was not affected by the adoption of the zoning ordinance, even if it be held that its applicable provisions are valid, for the reason that the construction of said station was in progress under proper authority before the zoning ordinance became effective.

The allegations of the petition, in regard to this phase of the case, are to the effect that the Champion Building Company (appellee) acquired title to the lot in question February 5, 1926, and made a pretended sale or lease of same to the Magnolia Petroleum Company (date not alleged), and had begun, before the suit was filed, the erection of the gas and oil station to be used when completed by the Magnolia Petroleum Company for the sale of its various products. It does not appear when the work of construction was begun, but it does appear that it was in progress when the suit was filed. Bearing upon this question, section 21 of the zoning ordinance reads:

"Completion of Existing Buildings. Nothing herein contained shall require any change in the plans, construction or designated use of a building actually under construction at the time of the passage of this ordinance, and, which entire building shall be completed within two years from the date of the passage of this ordinance. Nothing herein contained shall require any change in plans, construction or designated use of a building for which a building permit has been heretofore issued and which entire building shall be completed within two years from the date of the passage of this ordinance. If an amendment to this ordinance is hereafter adopted changing the boundaries of districts the provisions of this ordinance with regard to buildings or premises existing or buildings under construction or building permits issued at the time of the passage of this ordinance shall apply to buildings or premises existing or buildings under construction or building permits issued in the area affected by such amendment at the time of the passage of such amendment."

Obviously this section forbids a retroactive effect being given the ordinance, and was evidently designed to protect, from financial loss, those who, prior to the adoption of the ordinance, or an amendment introducing new restrictions and regulations, had begun the construction, or had planned and secured a permit for the construction of a building for a designated use. But this provision protects the innocent, that is, one who legally and rightfully began, or planned, the construction of a building for a designated use, prior to the effectiveness of the ordinance or an amendment thereto, but we do not think one can claim immunity under this provision who, in doing these things, acted in defiance of a valid ordinance.

Because, in our opinion, the trial court erred in sustaining the general demurrer and dismissing the suit, its judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.