OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

April 23, 2002

Mr. Robert J. Huston
Chair, Texas Natural Resource
  Conservation Commission
P. O. Box 13087
Austin, Texas 78711-3087

Opinion No. JC-0493

Re: Applicability of new requirements for portable facilities and concrete crushers imposed by amendments to the Texas Clean Air Act  (RQ-0460-JC)

Dear Mr. Huston:

On behalf of the Texas Natural Resource Conservation Commission (the "Commission"), you request an opinion about requirements for portable facilities and concrete crushers added in 2001 to the Texas Clean Air Act, chapter 382 of the Health and Safety Code. These provisions, Health and Safety Code sections 382.056(r)(1) and 382.065, were included in House Bill 2912 of the 77th Legislature, which provided for continuing the Commission after review under the Sunset Act, chapter 325 of the Government Code. *See* Act of May 27, 2001, 77th Leg., R.S., ch. 965, §§ 2.02, 5.07, 2001 Tex. Gen. Laws 1933, 1943, 1961.

Section 382.056(r)(1) provides that section 382.056, which requires applicants for certain permits to publish notice of intent to obtain a permit, does not apply to permit applications for "the relocation or change of location of a portable facility to a site where a facility permitted by the Commission is located if no portable facility has been located at the proposed site at any time during the previous two years." TEX. HEALTH & SAFETY CODE ANN. § 382.056(r)(1) (Vernon Supp. 2002).[1]

You ask whether section 382.056(r)(1) may be interpreted to allow a portable facility to relocate to a site without notice if: "(a) the portable facility is moving to a site that contains a permitted facility, and (b) there has been a portable facility at that same site within the past two years."[2] Section 382.056(r)(1) may not be interpreted to allow a portable facility to relocate to a site without notice if "(a) the portable facility is moving to a site that contains a permitted facility, and (b) there has been a portable facility at that same site within the past two years."

---

[1]Because your question relates only to section 382.056(r)(1), we will not consider section 382.056(r)(2), which exempts from the notice requirement "a facility located temporarily in the right-of-way, or contiguous to the right-of-way, of a public works project." TEX. HEALTH & SAFETY CODE ANN. § 382.056(r)(2) (Vernon Supp. 2002).

[2]Letter from Duncan C. Norton, General Counsel, Texas Natural Resource Conservation Commission, to Honorable John Cornyn, Texas Attorney General at 1 (Nov. 2, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

You also ask about section 382.065 of the Health and Safety Code, which requires the Commission to prohibit a concrete crushing facility from being located within 440 yards of a residence, school, or place of worship. *See id.* § 382.065. This requirement "does not apply to an existing concrete crushing facility." *Id.* § 382.065(b). You inquire about the meaning of "existing" facility in this provision. An "existing" concrete crushing facility is one that was physically present on the site as of the effective date of the provision, but this exemption does not apply to a concrete crushing facility that was located or operating illegally at the site on the effective date.

The purpose of Health and Safety Code chapter 382 is "to safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants." *Id.* § 382.002 (Vernon 2001). To carry out this purpose, the Act requires that any person intending to construct, modify, or operate a facility that may emit air contaminants first apply to the Commission for an air quality permit, which must be granted before that person may construct or operate the facility. *See id.* §§ 382.051(a)(1), .0518(a) (Vernon Supp. 2002); *see also id.* § 382.055 (application for review and renewal of a preconstruction permit to determine whether authority to operate should be renewed). With certain exceptions, an applicant for a permit or permit amendment under section 382.0518 or a permit renewal review under section 382.055 "shall publish notice of intent to obtain the permit, permit amendment, or permit review not later than the 30th day after the date the commission determines the application to be administratively complete." *Id.* § 382.056(a). There are procedures for public comment following the publication of notice. *See id.* § 382.056(g)-(o); *see also* HOUSE COMM. ON ENVIRONMENTAL REGULATION, BILL ANALYSIS, Tex. H.B. 801, 76th Leg., R.S. (1999) (describing amendments to Health and Safety Code section 382.056 and to other statutes on environmental permit programs administered by Commission).

The Commission informs us that portable facilities include "concrete batch plants, trench burners and concrete and rock crushers." *See* Request Letter, *supra* note 2, at 2. "Facility" for purposes of chapter 382 is "a discrete or identifiable structure, device, item, equipment, or enclosure that constitutes or contains a stationary source." TEX. HEALTH & SAFETY CODE ANN. § 382.003(6) (Vernon 2001); *see also id.* § 382.003(12) (a "source" is "a point of origin of air contaminants"). For a "facility" to be subject to the Texas Clean Air Act, emissions from it must be from a "stationary source." *See* Request Letter, *supra* note 2, at 2; TEX. HEALTH & SAFETY CODE ANN. § 382.003(6) (Vernon 2001). *See also* 42 U.S.C. § 7602(z) (1994) (definition of "stationary source" in the Federal Clean Air Act). The emissions from portable facilities, while they are operating, are considered to be emissions from a stationary source. *See* Request Letter, *supra* note 2, at 2.

Well before section 382.056(r)(1) of the Health and Safety Code was adopted, the Commission had developed a procedure governing the relocation of portable facilities. The Commission issued "portable permits" to cover portable facilities, and these permits generally included " 'relocation conditions' which typically contain[ed] control requirements and future site authorization instructions for seeking approval from the appropriate regional office."[3] Pursuant to

---

[3]*See* Memorandum from John Steib, Director, Air Permits Division, Office of Permitting, Registration & Remediation, Texas Natural Resource Conservation Commission, to Portable Facility Potential & Existing Applicants

(continued...)

section 116.130(b), title 30 of the Texas Administrative Code, "[u]pon written request by the owner or operator of a facility" that had previously received a permit or special permit from the Commission, the executive director or a designated representative could exempt the relocation of the facility from the notice requirements of section 116.130(a), if there were no indication that operation of the facility at the new location would significantly affect ambient air quality or would cause a condition of air pollution. 30 TEX. ADMIN. CODE § 116.130 (2001); *see also id.* § 116.111(b)(2) (similar exemption from public notice requirements of 30 TEX. ADMIN. CODE ch. 39). Thus, under the Commission's practice before section 382.056(r) was adopted, it was possible for a portable facility to be exempted from notice of relocation, depending upon the effect on air quality in the new location. Moreover, the request for change of location could be processed at one of the Commission's regional offices instead of its headquarters in Austin. *See* Steib Memo, *supra* note 3. *See also* Act of July 30, 1991, 72d Leg., 1st C.S., ch. 3, § 1.097(d), 1991 Tex. Gen. Laws 4, 44-45 (organization of regional offices). The adoption of section 382.056(r) required some significant changes in the Commission's procedures for the relocation of portable facilities.

Section 382.056(r) provides a statutory exemption from the public notice requirement for the relocation of certain portable facilities. The notice requirement does not apply to permit applications for

> (1) the relocation or change of location of a portable facility to a site where a facility permitted by the commission is located *if no portable facility* has been located at the proposed site at any time during the previous two years; or

> (2) a facility located temporarily in the right-of-way, or contiguous to the right-of-way, of a public works project.

TEX. HEALTH & SAFETY CODE ANN. § 382.056(r) (Vernon Supp. 2002) (emphasis added).

Thus, section 382.056(r)(1) provides an exemption from the notice requirements of section 382.056 when a portable source of air contaminants is moved to the location of a facility that has a permit, "if no portable facility has been located at the proposed site at any time during the previous two years." *Id.* § 382.056(r)(1). It requires formal notice that a portable facility will relocate to a site on which a portable facility has operated within the last two years, although its presence there during that time presumably gave residents of the area de facto notice that a portable source might operate there. On the other hand, formal notice is omitted if no portable facility has been present at the site for over two years, even if no portable facility has ever been located there. Under these

---

[3](...continued)
(Sep. 1, 2001), *available at* http://www.tnrcc.state.tx.us/permitting/airperm/nsr_permits/files/portmemo01.pdf [hereinafter Steib Memo]. *See also* Brief from Thomas J. Bond, Akin, Gump, Strauss, Hauer & Feld, L.L.P, to Honorable John Cornyn, Texas Attorney General at 2-3 (Dec. 12, 2001) (on file with Opinion Committee) [hereinafter Bond Brief].

circumstances, residents would have little or no reason to expect that a portable source might begin to operate there. The exemption provision appears to be counter-intuitive.

Section 382.056(r)(1) resulted from a series of amendments to House Bill 2912. *See* H.J. OF TEX., 77th Leg., R.S. 1237-38 (2001). A committee substitute to House Bill 2912 by the House Committee on Environmental Regulation would have completely exempted from the notice requirement "the relocation or change of location of a portable facility to a site where a facility permitted by the commission is located." *See* Comm. Sub. Tex. H.B. 2912, 77th Leg., R.S., § 2.24 (2001) (provisions of Health and Safety Code section 382.056 redesignated as Water Code section 5.673); *see also* HOUSE COMM. ON ENVIRONMENTAL REGULATION, BILL ANALYSIS, Comm. Sub. Tex. H.B. 2912, 77th Leg., R.S. (Apr. 3, 2001). On second reading in the House, Representative Solomons proposed an amendment narrowing the comprehensive exemption from the notice requirement. *See* H.J. OF TEX., 77th Leg., R.S. 1237-38 (2001) (Amendment No. 23 by Representative Solomons). The amendment by Representative Solomons provided that the notice requirement would not apply to the relocation or change of location of a portable facility to a site where a facility permitted by the Commission is located "if the portable facility has been located at the current site for less than two years." *Id.* (underlining in original). Representative Solomons explained that the amendment was intended to ensure that when portable facilities were moved between approved sites there would be some notice after a period of time, at least every two years. *Debate on Tex. H.B. 2912 Before the House Comm. on Environmental Regulation*, 77th Leg., R.S. (Apr. 19, 2001) (audio tape available from House Video/Audio Services). Representative Bosse amended Representative Solomons' amendment to clarify the location provision and it was adopted as rewritten. *See* H.J. OF TEX., 77th Leg., R.S. 1237-38 (2001) (Amendment No. 24 by Representative Bosse); *Debate on Tex. H.B. 2912, supra*. Unfortunately, the provision that resulted from the two amendments did not accurately express Representative Bosse's and Representative Solomons' intentions.[4]

Under section 382.056(r)(1) of the Health and Safety Code as enacted, the exemption applies if a portable facility had not been located at a site *within* a two-year time period. This language is contrary to Representative Solomons' statement that there would have to be some notice at least every two years when a portable facility was moved between sites. Representatives Bosse and Solomons have written to the Commission stating that their intention underlying the amendment was to allow a portable facility to move from one permitted site to another permitted site within a two-year period without having to give the notice otherwise required by section 382.056.[5] Thus, the following revision of section 382.056(r)(1) would reflect their intent:

(r) This section [requiring notice] does not apply to:

---

[4]*See* Letter from Honorable Fred M. Bosse (Sept. 7, 2001) and Letter from Honorable Burt Solomons (Sept. 10, 2001) to Jeff Saitas, Executive Director, Texas Natural Resource Conservation Commission, attached to Brief from Aileen M. Hooks, Baker Botts, to Honorable John Cornyn, Texas Attorney General (Dec. 12, 2001) (on file with Opinion Committee) [hereinafter Baker Botts Brief].

[5]*See id.*

the relocation or change of location of a portable facility to a site where a facility permitted by the commission is located if ~~no~~ [a] portable facility has been located at the proposed site at any time during the previous two years.

In effect, you ask whether section 382.056(r) may be construed as if its language conformed to the above revision.

It is "a cardinal rule of statutory construction" that the courts are to give effect to the intent of the legislature. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). The process of statutory construction seeks to effectuate the "collective" intent or purpose of the legislators who enacted the legislation, found in the language of the statute. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (en banc). Thus, a court construes a statute, first by looking at the plain and common meaning of the statute's words. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999); *see also Fleming Foods*, 6 S.W.3d at 284. When the meaning of statutory language is unambiguous, the courts will adopt, "with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms." *Fitzgerald*, 996 S.W.2d at 865. The intent of an individual legislator, even a statute's principal author, is not legislative history controlling the construction to be given a statute, but is at most persuasive authority similar to the comments of any scholar. *See Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993), *cert. denied*, 510 U.S. 985 (1993) (law review article about statute written by author of legislation).

Exceptions from the plain meaning rule are made when there is an obvious error such as a typographical error or the application of the literal language of a statute would produce an absurd result. *See Fleming Foods*, 6 S.W.3d at 284; *see also Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132 (Tex. 1994). We have received briefs arguing that applying the literal language of section 382.056(r)(1) of the Health and Safety Code produces an absurd result and that we should instead construe it to apply as the legislators who provided its language intended it to apply. *See* Baker Botts Brief, *supra* note 4; Bond Brief, *supra* note 3.

Although the result of section 382.056(r)(1) is unexpected, and it does not reflect the intent of the two legislators who prepared it, we cannot say that it is absurd. The legislators who voted in favor of this provision may have believed that the language of the provision was tailored to the existing problems in this area of regulation. The Texas Supreme Court stated in *Fleming Foods* that a citizen should be able to determine the law from the language of the Revised Statutes and should not have to examine the session laws as well. *Fleming Foods*, 6. S.W. 3d at 285. Nor should they have to look for an Attorney General Opinion that contradicts the literal language of a statute.

A law review article on the "absurd-results" principle in Texas found numerous cases that cited this principle but relatively few of them relied upon it to depart from the plain meaning of a statute. *See* J. Woodfin Jones, *The Absurd-Results Principle of Statutory Construction in Texas*, 15 REV. LITIG. 81, 88, 96, 102, 107 (1996). "[I]n the 144 years since the Texas Supreme Court recognized the absurd-results principle as an exception to the plain-meaning rule, only 28 cases have

so used it." *Id.* at 116; *see id.* at 139 (Appendix C; list of the 28 cases). The largest number of these cases involve procedural matters. *Id.* at 117. None of them appear to depart from the plain meaning rule on account of an error in the expression of a legislator's intent. *But see Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co. of Tex.,* 180 S.W.2d 906, 908 (Tex. 1944) (stating in dicta that the word "and" is sometimes construed to mean "or" if not doing so would result in an absurdity or be tantamount to a refusal to correct a mistake).

The Commission has been able to apply this statute as written,[6] although the permitting requirement has caused delays for persons applying for permits.[7] This is not a case where, for example, construing a deadline literally will undermine an entire legislative program. *See Barshop v. Medina Underground Water Conservation Dist.,* 925 S.W.2d 618, 629-30 (Tex. 1996) (court interpreted statutory deadline of March 1, 1994, for filing declarations of historical water use under Edwards Aquifer Act as "six months after the Authority becomes effective" because legal challenges delayed implementation of Authority well beyond March 1, 1994 deadline).

In answer to your first question, we conclude that section 382.056(r)(1) may not be interpreted to allow a portable facility to move to a site without notice if "(a) the portable facility is moving to a site that contains a permitted facility, and (b) there has been a portable facility at that same site within the past two years." *See* Request Letter, *supra* note 2, at 1. The remedy to any problems raised by this provision is to seek legislation.

You also ask whether the statute applies to pending applications, or only to those applications filed on or after the effective date of the statute. *See id.* House Bill 2912 was effective September 1, 2001, with exceptions not relevant to section 382.056(r)(1) of the Health and Safety Code. *See* Act of May 27, 2001, 77th Leg., R.S., ch. 965, §§ 18.01, 18.15, 2001 Tex. Gen. Laws 1933, 1985, 1989. There was no provision expressly deferring the operation of section 382.056(r)(1). In contrast, changes made by House Bill 2912 with respect to the Commission's consideration of compliance history in permit decisions "apply only to an application for the issuance, amendment, modification, or renewal of a permit submitted to the Texas Natural Resource Conservation Commission on or after September 1, 2002." *Id.* § 18.05(f), 2001 Tex. Gen. Laws at 1986-87.

A statute is operative as soon as it becomes a law. *See Popham v. Patterson,* 51 S.W.2d 680, 682 (Tex. 1932). The legislature may make changes in procedural statutes applicable to future steps in pending cases because litigants do not have vested rights in a procedural remedy. *See Merchs. Fast Motor Lines v. R.R. Comm'n,* 573 S.W.2d 502, 504-05 (Tex. 1978). The same rule has been held to govern changes in administrative rules that are procedural in nature. *See Tex. Dep't of Health v. Long,* 659 S.W.2d 158, 160 (Tex. App.—Austin 1983, no writ). Accordingly, we conclude that section 382.056(r)(1) applies to pending applications for permits.

---

[6]*See* Steib Memo, *supra* note 3.

[7]*See* Brief from Thomas L. Johnson, Executive Vice President, Associated General Contractors of Texas, to Honorable John Cornyn, Texas Attorney General (Nov. 14, 2001) (on file with Opinion Committee).

You ask whether a facility permitted by the Commission in section 382.056(r)(1) refers only to "facilities permitted under the Texas Clean Air Act or [does] it also include facilities permitted under other authority of the Commission," such as the Texas Solid Waste Disposal Act, chapter 361 of the Health and Safety Code. *See* Request Letter, *supra* note 2, at 1. Section 382.056(r)(1) must be read in its context in the Texas Clean Air Act, chapter 382 of the Health and Safety Code. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (words and phrases shall be read in context). Moreover, its terms must be construed in accordance with their statutory definitions. *See Transp. Ins. Co., v. Faircloth*, 898 S.W.2d 269, 274 (Tex. 1995); TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 1998).

Section 382.003 of the Health and Safety Code provides that, "[i]n this chapter[,] . . . [f]acility [is] a discrete or identifiable structure, device, item, equipment, or enclosure that constitutes or contains a stationary source," and a "[s]ource [is] a point of origin of air contaminants." TEX. HEALTH & SAFETY CODE ANN. § 382.003(6), (12) (Vernon 2001). The Commission issues permits to regulate facilities that may emit air contaminants. *See id.* §§ 382.051(a)(1) (Vernon Supp. 2002) (Commission may issue a permit to construct a new facility or modify an existing facility that may emit air contaminants); .0518(a) (permit must be obtained before work is begun on construction of new facility or modification of existing facility that may emit air contaminants). A "permitted facility" is, accordingly, limited to a source of air contaminants that is subject to a permit issued under the Texas Clean Air Act.

You also inquire about the interpretation of section 382.065 of the Health and Safety Code, which provides as follows:

> (a) The commission by rule shall prohibit the location of or operation of a concrete crushing facility within 440 yards of a building used as a single or multifamily residence, school, or place of worship.
>
> (b) This section does not apply to an existing concrete crushing facility.

*Id.* § 382.065 (Vernon Supp. 2002) (added by Act of May 27, 2001, 77th Leg., R.S., ch. 965, § 5.07, 2001 Tex. Gen. Laws 1933, 1961-62).

You inquire about the meaning of "existing" facility, asking specifically whether a facility is "existing" under the following circumstances:

> (a) The concrete crushing facility was authorized as of September 1, 2001 [the effective date of Health and Safety Code § 382.065][,] and it is actually located or operating at the site as of September 1, 2001;

> (b) The concrete crushing facility was authorized as of September 1, 2001[,] but it is not located or operating at the site as of September 1, 2001; or
>
> (c) The concrete crushing facility was not authorized as of September 1, 2001[,] but it is located or operating illegally at the site as of September 1, 2001.

Request Letter, *supra* note 2, at 2.

The Code Construction Act, chapter 311 of the Government Code, provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," and "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). Chapter 382 does not define "existing," but we may look at a dictionary definition to determine the plain meaning of a word. "Existing" is defined as "[t]hat exists or has existence; that exists at any implied or specified time," while "exist" means "[t]o have place in the domain of reality, have objective being." V OXFORD ENGLISH DICTIONARY 542, 543 (2d ed. 1989). Thus, an "existing" facility is a facility actually located at a site on September 1, 2001, and not merely a proposed facility that has not become a tangible entity. The dictionary definition of "existing" is consistent with the use of "existing" elsewhere in chapter 382 of the Government Code. For example, the Commission may issue a permit "to construct a new facility or modify an existing facility." TEX. HEALTH & SAFETY CODE ANN. § 382.051(a)(1) (Vernon Supp. 2002). The distinction between construction of a "new facility" and modification of an "existing facility" shows that an "existing facility" is to be contrasted with one that has not yet been built. *See also id.* §§ 382.0518 (Vernon Supp. 2002) (preconstruction permit for construction of new facility or modification of existing facility); .057 (Vernon 2001) (Commission may not exempt any major modification of existing facility from securing preconstruction permit). Accordingly, an "existing facility" includes a concrete crushing facility that was authorized as of September 1, 2001, and actually located or operating at the site as of that date, but it does not include a concrete crushing facility authorized as of September 1, 2001, but not located or operating at the site as of that date.

A concrete crushing facility that was not authorized as of September 1, 2001, but was located or operating illegally at the site as of that date is an "existing" facility in the ordinary sense of that word. It was actually located and operating at the site. However, the operators have no right to continue operating this facility illegally and they are subject to various penalty and remedy provisions, including a suit for injunctive relief. *See id.* § 382.085 (Vernon 2001). *See also* TEX. WATER CODE ANN. §§ 5.013(a)(11) (Vernon Supp. 2002) (noting Commission's responsibilities under Health & Safety Code, chapter 382); 7.002 (Vernon 2000) (Commission may initiate an action under Water Code, chapter 7, to enforce provisions of Water Code and those provisions of Health and Safety Code under its jurisdiction); 7.032 (enforcement of Commission rule by injunction). The Texas courts have held that zoning provisions which allow nonconforming uses to continue do not apply to uses of property that were illegal when the zoning provision was adopted. *See City of Pharr v. Pena*, 853 S.W.2d 56, 63 (Tex. App.–Corpus Christi 1993, writ denied); *City of Dallas v.*

*Meserole*, 155 S.W.2d 1019, 1023 (Tex. Civ. App.–Dallas 1941, writ ref'd w.o.m.); *Scott v. Champion Bldg. Co.*, 28 S.W.2d 178, 184 (Tex. Civ. App.–Dallas 1930, no writ). In our opinion, this rule of construction should also apply to section 382.065(b) of the Health and Safety Code. Accordingly, the exemption from the location requirement of section 382.065 does not apply to a concrete crushing facility that was located or operating illegally at the site when section 382.065 became effective.

## S U M M A R Y

Section 382.056(r)(1) of the Health and Safety Code provides an exemption from giving notice of intent to apply for certain permits under the Texas Clean Air Act when a portable source of air contaminants is moved to the location of a facility permitted by the Commission, "if no portable facility has been located at the proposed site at any time during the previous two years." TEX. HEALTH & SAFETY CODE ANN. § 382.056(r)(1) (Vernon Supp. 2002). This provision may not be construed to allow the exemption where a portable facility has been located at the proposed site during the previous two years. Section 382.056(r)(1) applies to pending applications for permits. A "permitted" facility in this provision is a source of air contaminants that is subject to a permit issued under the Texas Clean Air Act.

Section 382.065 of the Health and Safety Act exempts "an existing concrete crushing facility" from a prohibition on locating or operating a concrete crushing facility within 440 yards of a residence, school, or place of worship. *Id.* § 382.065. An "existing" concrete crushing facility is one that was physically present on the site as of the effective date of the provision, but the exemption does not apply to a concrete crushing facility that was located or operating illegally at the site on the effective date.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee